**WANG, HARTMANN, GIBBS & CAULEY P.C.**
A Professional Law Corporation
Jeffrey C. P. Wang (SBN: 144414)
Jason B. Witten (SBN 220612)
1301 Dove Street, Suite 1050
Newport Beach, CA  92660
Telephone:  (949) 833-8483
Facsimile:  (949) 833-2281

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GALLAGHER, an individual, and JOHANNA SANCHEZ, an individual,<br><br>          Plaintiffs,<br><br>  vs.<br><br>AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, a New York corporation; ABERCROMBIE & KENT, Inc., an Illinois corporation; and  DOES 1-20, inclusive,,<br><br>          Defendants. | Case No. CV 08-743 AJG (RNB)<br><br>Honorable Judge Andrew J. Guilford<br><br>**NOTICE OF MOTION AND LOCAL RULE 37-1 JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE WITNESSES FOR DEPOSITION AND FOR IMPOSITION OF SANCTIONS**<br><br>**Hearing:**<br>**Date:**  Tuesday, June 16, 2009<br>**Time:**  9:30 a.m.<br>**Dept**.   6D<br><br>**Discovery Cut-off**:  August 3, 2009<br>**Final Pretrial Conference:** October 19, 2009<br>**Action Filed:** May 23, 2008<br>**Trial Date:** November 3, 2009 |

i

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Tuesday, June 16, 2009 at 9:30 a.m. in Courtroom 6D of the above-entitled court located at 411 West Fourth Street, Santa Ana, California 92701-4516, Plaintiffs  RICHARD GALLAGHER AND JOHANNA SANCHEZ ("Plaintiffs") will move this Court for an Order compelling Defendants AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY and ABERCROMBIE & KENT, INC. ("Defendants") to produce the following witnesses for deposition in the State of California:

1.  John Muchiri, General Manager of A&K;
2.  Ahmed Tawfeek, Senior Tour Coordinator of A&K;
3.  Mahmoud Hagag, Tour Coordinator of A&K;
4.  Hossam Kotb, Tour Coordinator of A&K;
5.  Unis (Eunice), tour guide of A&K[1];
6.  John the Driver, tour guide of A&K[2];
7.  Reuben Makau, Fleet Assistant of A&K;
8.  Cyrus Magu, Tour consultant of A&K;
9.  Amir Abdel Alim, Tour Consultant of A&K;
10. Geoffrey Macharia, Division Manager of A&K;
11. Fiby Youssif of A&K[3];
12. Jane Gano of A&K[4];
13. Julie Schwartz of A&K[5];

---

[1] Official title presently unknown.
[2] Official title presently unknown.
[3] Official title presently unknown.
[4] Official title presently unknown.

ii

14. Susan Jaeger of A&K[6];

15. Luca Belipietro.[7]; and

16. Martin the Airplane Pilot.[8];

Plaintiffs will further seek an Order for the imposition of the following Sanctions against Defendant:

1. Evidentiary sanctions precluding Defendants from introducing at trial, any testimony or evidence from the witnesses in Section I, above, or those who are similarly situated, whom Defendants have refused to produce for deposition;

2. Evidentiary sanctions of a negative inference jury instruction for Defendants' refusal to produce those witnesses in Section I, above, for deposition, such that any evidence those witnesses in Section I could have provided would have been against Defendants and would support Plaintiffs' allegations;

3. Monetary sanctions against Defendants in the amount of **$3,500.00**, for Defendants' failure to meet and confer in good faith with Plaintiffs concerning the instant discovery dispute, and for the refusal to produce the above-referenced witnesses for deposition without substantial justification, pursuant to Federal Rules of Civil Procedure Section 37(d)(1)(A)(i) and 37(d)(1)(A)(i))

This Motion to Compel is based upon this Notice of Motion, the attached

---

[5] Official title presently unknown.
[6] Official title presently unknown.
[7] Official title presently unknown.
[8] Official title presently unknown.

iii

Joint Stipulation Regarding Plaintiffs' Motion to Compel, Memorandum of Points and Authorities, the Declarations of Richard Gallagher and Jason B. Witten with attached exhibits, the pleadings, papers and proceedings in this action, any oral argument or documentary evidence presented at the hearing of this matter.

This Motion is made following the conference of counsel pursuant to Local Rule 37-1, which took place on May 1, 2009 regarding the issues relating to the motion, and further communications between counsel.

Dated: May 26, 2009          WANG, HARTMAN, GIBBS & CAULEY, P.C.
                             A Professional Law Corporation


                             By:   /s/Jason B. Witten
                                   Jeffrey C.P. Wang, Esq.
                                   Jason B. Witten, Esq.
                                   Attorneys for Plaintiffs
                                   RICHARD GALLAGHER and
                                   JOHANNA SANCHEZ

iv

# **TABLE OF CONTENTS**

I.     ISSUES IN DISPUTE………………..………………………………...1

    A. DEPOSITIONS OF WITNESSES IN EGYPT AND KENYA

      FOR WHICH NOTICES OF DEPOSITION HAVE BEEN

      SERVED…………………………………………………………1

    B. DEPOSITIONS OF A&K WITNESSES IN EGYPT AND

      KENYA FOR WHICH NOTICES HAVE NOT YET BEEN

      SERVED…………………………………………………...2

II.    PARTIES' CONTENTIONS……………………………………………3

PLAINTIFFS' INTRODUCTORY STATEMENT…………………………...3

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN

SUPPORT OF MOTION TO COMPEL…………………………….…………6

    A.  BACKGROUND…………………………………………………...6

      1.     Factual Background……………………………….…………6

      2.     Background of Discovery Dispute………………..………11

    B. IF DEFENDANTS HAVE CONTROL TO BRING THEM TO

      TRIAL, THEN THEY HAVE CONTROL TO BRING TO

      DEPOSITION.  DEFENDANT A&K SHOULD BE

      COMPELLED TO PRODUCE ITS MANAGERS AND

      REPRESENTATIVES IN EGYPT AND KENYA FOR

      DEPOSITION WHO HAVE PERSONAL KNOWLEDGE OF

      THE TRANSACTIONS ALLEGED IN THE COMPLAINT….14

      1.     Defendants Should Be Compelled To Produce A&K's

        Employees Under Their Control That Have Personal

v

Knowledge Of The Events And Transactions Alleged In The Complaint……………………………………………15

2. Notices Of Deposition Are Sufficient To Compel The Attendance Of Those Witnesses Controlled By A&K...…17

C. DEFENDANT A&K SHOULD BE COMPELLED TO PRODUCE ITS MANAGERS AND REPRESENTATIVES IN EGYPT AND KENYA FOR DEPOSITION HERE IN THE UNITED STATES WHERE IT IS SAFE AND LEGAL TO DO SO……………………………………………………………20

1. Defendants Are Unable To Confirm And Ensure The Safety Of Taking The Depositions Of The Above-Named Witnesses In Either Egypt And/Or Kenya………………………………….………………..21

2. The Taking Of Depositions In Either Egypt And Kenya Would Be Perilous And Illegal For The Witnesses And For The Parties……………..………………………………21

a. Taking The Depositions In Either Kenya Or Egypt Would Place The Physical Safety Of The Parties And Witnesses At Substantial Risk………………….....21

b. The Parties Do Not Have A Cognizable Legal Basis Upon Which To Rely To Take The Depositions In Kenya Without Threat Of Incarceration………………………23

D. DEFENDANT A&K SHOULD BE COMPELLED TO PRODUCE ITS MANAGERS AND REPRESENTATIVES IN EGYPT AND KENYA FOR DEPOSITION HERE IN THE

vi

UNITED STATES WHERE DEFENDANTS CONDUCT SUBSTANTIAL BUSINESS AND HAVE PURPOSEFULLY AVAILED THEMSELVES OF THE BENEFITS AND PROTECTIONS OF THE SEVERAL STATES……………24

1.   The Court Has Discretion To Determine The Proper Venue For Deposition………………………..24

2.   Defendants Solicited Plaintiffs In California And Have Purposefully Availed Themselves Of The Benefits And Protections Of Conducting Business In This State And The Several United States…………………………25

3.   The Depositions Should Be Taken Here In California To Secure A Prompt, Efficient And Effective Discovery Process……………………………………………..27

E. DEFENDANTS SHOULD BE SANCTIONED FOR THEIR FAILURE TO PRODUCE THEIR EMPLOYEES FOR DEPOSITION AND TO ENGAGE PLAINTIFFS IN A MEANINGFUL MEET AND CONFER PROCESS REGARDING THE DISCOVERY DISPUTE…………..………29

PLAINTIFFS' CONCLUSION…………………………….…………31


DEFENDANTS' INTRODUCTORY STATEMENT………………………..31

MEMORANDUM OF POINTS AND AUTHORITIES……………………..34

I. INTRODUCTION……………...……………………………………..34

A. Factual Background….…………………………………………34

B. Discovery Dispute……….………………………………..34

1

2           1.  The Subject Witnesses are Independent Contractors of

3             Abercrombie & Kent, Inc……………………………..34

4           2.  Plaintiffs Improperly Seek to Compel the Depositions on

5             Non-Party Witnesses Who Reside in Egypt and Kenya….36

6  II. ARGUMENT……………………..……………………………………..38

7      A.  Plaintiffs' Cannot Compel Defendants to Produce the

8        Depositions of Non-Party Witnesses Employed by Independent

9        Contractors……………………………………………………38

10      B.  Plaintiffs Have Failed to Properly Notice the Deposition of the

11        Non-Party Witnesses………………………..………………40

12      C.  Plaintiffs Should be Sanctioned for Bringing Forth this

13        Motion……………………………………...………………..42

14  III. CONCLUSION ………………………………………………………..42

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

## ISSUES IN DISPUTE

**A.   DEPOSITIONS OF A&K WITNESSES IN EGYPT AND KENYA FOR WHICH NOTICES OF DEPOSITION HAVE BEEN SERVED.**

Plaintiff noticed the depositions of the following A&K witnesses, all of whom work and reside in Egypt and Kenya:

1.   John Muchiri, General Manager of A&K;

2.   Ahmed Tawfeek, Senior Tour Coordinator of A&K;

3.   Mahmoud Hagag, Tour Coordinator of A&K;

4.   Hossam Kotb, Tour Coordinator of A&K;

5.   Unis (Eunice), tour guide of A&K[9];

6.   John the Driver, tour guide of A&K[10];

7.   Luca Belipietro, A&K's agent and/or the owner of Campi Ya Kanzi in Kenya, identified in Defendants' Rule 26(a) Initial Disclosures.[11];

8.   Martin the Airplane Pilot, A&K's agent and/or an "employee" of Campi Ya Kanzi as identified in Defendants' Rule 26(a) Initial Disclosures.[12] (Declaration of Jason B. Witten, **Exhibit "O"**).

Defendants objected to each of the notices of deposition and refused to produce the witnesses for deposition as follows:

"[Witness] is employed by an independent contractor and is not an agent and/or employee of Abercrombie & Kenya and/or American Express.  Therefore, [Witness] is a non-party witness.  As discussed above, a non-party witness must be compelled by subpoena pursuant to Fed. Rules of Civ. Proc. 30(a)(1).  The Notice of Deposition for

---

[9] Official title presently unknown.
[10] Official title presently unknown.
[11] Official title presently unknown.
[12] Official title presently unknown.

LOCAL RULE 37-1 JOINT STIPULATION

[Witness] fails to comply with the Fed. Rules of Civ. Pro. Because the deponent was not served with a subpoena.   Furthermore, [Witness] may only be compelled by subpoena if he is a resident or national of the United States."  (Declaration of Jason B. Witten, **Exhibit "K"**").

## B.   DEPOSITIONS OF A&K WITNESSES IN EGYPT AND KENYA FOR WHICH NOTICES HAVE NOT YET BEEN SERVED.

Plaintiffs sought to notice the depositions of the following additional A&K witnesses located in Egypt and Kenya, and requested Defendants to accept notices of depositions for the following witnesses, all of whom are believed to work and reside in Egypt and Kenya:

1. Reuben Makau, Fleet Assistant of A&K;

2. Cyrus Magu, Tour consultant of A&K;

3. Amir Abdel Alim, Tour Consultant of A&K;

4. Geoffrey Macharia, Division Manager of A&K;

5. Fiby Youssif of A&K[13];

6. Jane Gano of A&K[14];

7. Julie Schwartz of A&K[15]; and

8. Susan Jaeger of A&K.[16]

Defendants refused to accept the notices of deposition on the same bases as those stated in response to those depositions noticed by Plaintiffs referenced above, *to wit*:

"[Witness] is employed by an independent contractor and is not an

---

[13] Official title and location presently unknown.

[14] Official title and location presently unknown. Ms. Gano may be in Kenya, but Defendants could not confirm whether this was the case.

[15] Official title presently unknown. Ms. Schwartz may be in Kenya, but Defendants could not confirm whether this was the case.

[16] Official title presently unknown. Ms. Jaeger may be in Kenya, but Defendants could not confirm whether this was the case.

2

agent and/or employee of Abercrombie & Kent and/or American Express.  Therefore, [Witness] is a non-party witness.  As discussed above, a non-party witness must be compelled by subpoena pursuant to Fed. Rules of Civ. Proc. 30(a)(1).  The Notice of Deposition for [Witness] fails to comply with the Fed. Rules of Civ. Pro. Because the deponent was not served with a subpoena.  Furthermore, [Witness] may only be compelled by subpoena if he is a resident or national of the United States."  (Declaration of Jason B. Witten, **Exhibit "K"**").

## II.
## PARTIES' CONTENTIONS

## PLAINTIFFS' INTRODUCTORY STATEMENT

After fully availing themselves of the benefits and protections of this State and its Courts by conducting a lucrative business here in California and soliciting its citizens – including Plaintiffs – to purchase luxury travel tour packages in foreign countries, Defendants now hypocritically refuse to produce their own managers and employees for deposition here in the United States after being sued in the United States for a travel package experience in those countries gone awry at the hands of their own negligence and breach.  Such a position is incongruous with their purposeful availment of the benefits of conducting business in this State, and Defendants must be compelled to immediately produce for deposition those witnesses constituting their managers and representatives in Egypt and Kenya whom Plaintiffs have noticed, and others whom Plaintiffs seek to notice, for deposition here in California.

Indeed, Defendants AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY ("**AMEX**") and ABERCROMBIE & KENT, INC.

("**A&K**")(collectively, "**Defendants**") are two *US-based* worldwide giants in the luxury travel industry, who conduct substantial business *in the State of California*, and who more specifically solicited Plaintiffs RICHARD GALLAGHER ("**Gallagher**") and JOHANNA SANCHEZ ("**Sanchez**")(collectively, "**Plaintiffs**") here *in the State of California* to purchase an exotic luxury travel tour package in Egypt and Kenya.  In order to induce Plaintiffs into purchasing Defendants' luxury travel package, *these US-based* Defendants represented and promised to Plaintiffs that they operated *their own* offices in those exotic countries staffed by *their own* "handpicked" managers and employees, and could, and would oversee the quality of Plaintiffs' travel experience abroad in Egypt and Kenya through those managers and representatives located in those respective countries.  Unfortunately for Plaintiffs, the travel experience promised to them by Defendants fell grossly short of what was originally bargained-for, and none of Defendants' managers and representatives in either Egypt or Kenya took appropriate steps to prevent Plaintiffs' $100,000 ostensible deluxe travel experience from turning into a veritable nightmare.

In order to bring this matter to justice, Plaintiffs have noticed the depositions of those very managers and representatives in Egypt and Kenya whom Defendants have marketed to Plaintiffs and the general public as their own "handpicked" employees that would be responsible for overseeing the success of Plaintiffs' travel experience.  However, Defendants now refuse to produce these witnesses (many of whom were identified as A&K representatives *in Defendants' own Initial Disclosures*) on the untenable grounds that they are independent contractors or are employed by independent contractors located in Egypt and Kenya.  As argued herein below, Defendants should be prohibited from hiding behind such a façade of separateness from their travel operations in those foreign countries and must be compelled to produce for deposition those vital witnesses

constituting the very managers and representatives of A&K that were percipient witnesses (and participants) of Plaintiffs' victimization by Defendants' recklessly misleading luxury travel operation.

Finally, as argued in detail hereinbelow, having the above-described witnesses appear here in United States – specifically in this District - for deposition serves the substantial interests of judicial economy, and will allow the parties to avoid the substantial costs and safety risks attendant to sending their attorneys and reporters overseas to countries which have been designated by the Bureau of Consular Affairs as perilous travel destinations.

Accordingly, Plaintiffs respectfully request that this Court compel Defendants produce the various out-of-country witnesses described herein for deposition here in the Central District of California, the site of the origin of the transactions that would give rise to the unfortunate events described in Plaintiffs' underlying Complaint, where Defendants operate and transact a substantial portion of their respective travel business, and where Defendants have sought the protections of this very Court.  In the alternative, if Defendants refuse to produce these witnesses, Plaintiffs request that the Court issue evidentiary sanctions to preclude Defendants from introducing any testimony and/or evidence from any of these named out-of-country witnesses at trial, including a negative interference jury instruction  that any such testimony would support Plaintiff's claims and hurt Defendant's defenses.   Plaintiffs further request the imposition of monetary sanctions against Defendants equivalent to the reasonable attorneys' fees incurred by Plaintiffs in bringing the instant Motion.

///
///

**<u>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**<u>IN SUPPORT OF MOTION TO COMPEL</u>**[17]

**A.     BACKGROUND**

     **1.     <u>Factual Background</u>**

In early October 2007, Defendant AMEX contacted Plaintiffs to solicit the purchase of a luxury vacation package to Egypt and Kenya – countries that Plaintiffs had never previously visited.   (Declaration of Richard Gallagher ("**Gallagher Decl.**"), para. 2).   In order to induce Plaintiffs to purchase their luxury travel package, Defendants AMEX and A&K marketed to Plaintiffs A&K's world-reknown reputation for being able to provide an extremely high-level of personalized service to Plaintiffs through their ground offices in Egypt and Kenya.  (Gallagher Decl., para. 2 – 3).  Based on Defendants' representations regarding A&K's operations in Egypt and Kenya, and that Plaintiffs would be personally attended to by A&K's own employees and representatives in those very exotic countries, Plaintiffs purchased the vacation package marketed to them by Defendants.  (Gallagher Decl., para. 3).

The A&K representatives who hosted, guided, and assisted Plaintiffs throughout their two-week trip to both Egypt and Kenya from November to December 2007 represented themselves to Plaintiffs as A&K employees, and Plaintiffs at all times believed these representations to be true, especially since the representations were consistent with those previously made by Defendants in the United States, to wit, that Plaintiffs would be attended to at all times by A&K's own handpicked staff.  (Gallagher Decl., para. 5 – 6, 12).

Indeed, Plaintiffs were provided maps, itineraries, brochures, and business cards by A&K representatives that displayed A&K office locations and addresses

---

[17] A copy of the Court's original scheduling order in this case is attached as **<u>Exhibit "I"</u>** to the concurrently filed Declaration of Jason B. Witten.

in Egypt and Kenya; The A&K representatives also wore shirts bearing the A&K's distinctive logo (which were published and displayed on A&K's internet websites, brochures, itineraries, invoices and receipts), and transported Plaintiffs to different locations in Egypt and Kenya in A&K-labeled vehicles.  (Gallagher Decl., para. 6, 8, 11).

Even further, among those A&K representatives that hosted Plaintiffs during their stay in Egypt and Kenya was ***John Muchiri, whom Defendants have identified in their Rule 26(a) Initial Disclosures as A&K's General Manager in Kenya***.  (Gallagher Decl., para. 7; Declaration of Jason Witten ("Witten Decl."), para. 3).

Like Mr. Muchiri, other A&K representatives hosted Plaintiffs during their overseas stay.  Defendants provided Plaintiffs with A&K business cards listing A&K office addresses and phone numbers in Egypt and Kenya, including Mr. Ahmed Tawfeek, A&K's Senior Tour Coordinator in Aswan, Egypt, Mahmoud Hagag, A&K's Tour Coordinator in Luxor, Egypt, and Mr. Hossam Kotb, also A&K's Tour Coordinator in Luxor, Egypt.  (Gallagher Decl., para. 8).

Other A&K representatives represented themselves to Plaintiffs as employees and representatives of A&K, and hosted, guided, and accommodated Plaintiffs as A&K's representatives in Egypt and Kenya.  These individuals, who also wore A&K-labeled apparel and drove A&K-labeled vehicles, included Ms. "Unis" (or Eunice)[18] and "John the driver."[19]  (Gallagher Decl., para. 9).  Others that hosted Plaintiffs on behalf of A&K, but who did not wear A&K-embroidered clothing or operate A&K-labeled vehicles included Luca Belipietro and "Martin the Pilot,"[20] who hosted Plaintiffs for several days at a Kenyan resort called "Campi Ya Kanzi" – another part of the Kenyan tour package that was

---

[18] Plaintiffs did not ask for Unis' last name.
[19] Plaintiffs did not ask for John's last name.
[20] I did not ask for Martin's name.

coordinated by Defendants AMEX and A&K.  (Gallagher Decl., para. 10).

The marketing materials provided and made available to Plaintiffs and to the general public at large by Defendants, including itineraries, brochures, and internet websites, confirm the facts set forth above, and which are described in further detail in the concurrently filed Declaration of Gallagher.

Indeed, A&K's marketing mantra is well-encapsulated by the following statement made on one of A&K's luxury travel brochures:

"Most luxury travel companies *rely on third parties on the ground*, offering the same experience across the board.  **We have *our own handpicked people* on the ground in over 60 offices worldwide**, and many more in the open air, on our boats and in camps and lodges. Our feet-on-the-ground approach is unique in the travel industry." [emphasis added].  (Witten Decl., para. 17).

It is therefore no great wonder that travelers such as Plaintiffs place their trust in A&K's representations that it has offices in the numerous exotic travel destinations that it offers, including Egypt and Kenya.  In fact, A&K's marketing materials distributed and offered to Plaintiffs and to the general public are replete with representations that confirm their professed commitment to personalized services through *its own* offices and staff in the very overseas locations where A&K offers luxury tour packages.   A&K boasts, for example, that it "owns "*operates 62 full-time offices around the world*, *staffed by over 2,000 people*," all "[u]nder the visionary direction of Mr. Kent and co-owner, Jorie Butler Kent,"[21] (Witten Decl., para. 14).

Similarly, Defendant A&K openly and unabashedly represents the manner in which A&K's guests and travelers are "*escorted*," "*accompanied*," and "*supported*" by the "*finest*" and "*seasoned A&K local guides*," "*expert A&K*

---

[21] According to A&K's marketing materials A&K was originally founded in Kenya by Mr. Geoffrey Kent and Ms. Jorie Butler Kent.  (Witten Decl., para. 14).

LOCAL RULE 37-1 JOINT STIPULATION

1  _**Tour Directors**_," "_**A&K's top-notch staff**_," "_**A&K's Egyptologists**_," "_**A&K's on-**_
2  _**site offices**_," and other "_**A&K experts**_."   (Witten Decl., para. 15).

3        Moreover, A&K again openly advertises that it operates out of no less than
4  48 "**A&K Ground Offices**" in "_**more than 25 countries**_" including, but certainly
5  not limited to Egypt and Kenya, and lists those office addresses and phone
6  numbers.  (Witten Decl., para. 16 - 18).  With respect to its travel operations in
7  Egypt, A&K proudly comforts its customers by ensuring that, _inter alia_, "you
8  know that you are in safe hands, namely those of _**our team**_ in Egypt," that "[a]ll of
9  _**our team**_, _from guide to driver_, are proud to welcome you to their country," that
10  "[w]ith nine offices throughout Egypt and over _**400 staff we employ**_ only the very
11  best guides," and "_**[o]ur team on the ground**_ will provide you with real insight."
12  (Witten Decl., para. 18).  Even A&K's Egypt-based website publishes "**A Warm**
13  **Welcome _to Egypt_ from…The Chairman & Vice-Chairman of A&K**," Mr.
14  Geoffrey Kent, CEO and co-owner of Defendant A&K, who confirms in an
15  electronically-signed letter that "_**we opened our own office**_ here [in Egypt] in
16  1982" and utilize "_**our**_ Egyptian staff."  (Witten Decl., para. 19).  Similarly, with
17  respect to its offices in Kenya, Defendant A&K states that, "[w]ith _**our history**_
18  _**and heritage**_ there can be few teams, if any, as well placed to showcase and get
19  the very best out of Kenya as _**our A&K Kenya team**_," that "we offer … _**our**_
20  private luxury mobile camps," and that "_**[o]ur**_ team will spare no effort to deliver
21  you the most inspiring holiday experience possible in Kenya."  (Witten Decl.,
22  para. 17).  In fact, Kenya is specifically described by Defendant A&K as "_**the**_
23  _**birthplace**_ of Abercrombie & Kent, and boasts that "[w]ith _**our**_ local knowledge
24  and experience of Kenya _**we can offer**_ you small, exquisite lodges and secluded
25  tented camps that make for a memorable safari far removed from the crowds."
26  (Witten Decl., para. 17).

27        While there is no shortage of marketing materials referencing its employees
28  and offices in Egypt and Kenya, and which are offered and provided directly by

Defendant A&K to its customers including Plaintiffs, other well-respected journals and business resources unaffiliated with A&K further corroborate and confirm Defendant A&K's offices in Egypt and Kenya as well.  For example, a well-known business-journal, BusinessWeek, describes A&K as being "based in Downers Grove, Illinois ***with additional offices in Egypt***…."  (Witten Decl., para. 20).  Similarly, the World Travel and Tourism Council ("WTTC"), describes A&K as a company that "comprises 50 worldwide and satellite offices, including … ***Cairo*** [and] ***Nairobi***…," "***employing more than 3000 travel professionals worldwide***," and having "overseas locations ***[that] are staffed by local residents of each country***."  (Witten Decl., para. 20).  Similarly, another long-standing travel industry organization known as Advancing Tourism To Africa ("ATTA"), lists Defendant A&K as "a leading tour operator … especially in Africa where ***their fully owned ground operating offices*** provide a first class service second to none."  ATTA further lists A&K's office locations including Nairobi, Mombasa, Arusha and Zanzibar. (Witten Decl., para. 20).

The worldwide reputation of Defendants AMEX and A&K as giants in the luxury travel business is undeniable and has been touted as such by respected news journals such as "Reuters," variously as "the world's largest travel service network" which "has a network of Travel and Foreign Exchange Services at locations worldwide."  (Witten Decl., para. 21).  Both Defendants AMEX and A&K have further benefited from marketing their partnership affiliation, and resulting expansive global reach of their travel services, with each other to the public, including Plaintiffs.  (Witten Decl., para. 21).  Not only has Defendant AMEX marketed A&K as one of its travel business partners in its own press releases, Defendant A&K also proudly markets its relationship with AMEX on its own website as well.  (Witten Decl., para. 21).

In sum, the pervasive nature, scope, and degree of Defendants' representations to Plaintiffs and to the public in general, as more fully described in

the concurrently filed Declarations of Gallagher and Witten, all indicate and confirm that Defendant A&K has its own offices and staff in Egypt and Kenya. Moreover, those very managers, hosts, and guides who attempted to perform AMEX/A&K's luxury vacation tour agreement with Plaintiffs were ostensible, if not actual, employees of A&K at A&K's offices in those respective countries, as described herein. Indeed, if Defendants' representations were a fraud, Defendants certainly should not be allowed to benefit from it.

### 2. **Background of Discovery Dispute**

Quite ironically, Defendants AMEX and A&K, who have made a substantial living for themselves and their employees by selling luxury travel packages overseas to citizens of the US, now refuse to travel to the US to appear for their own depositions. In fact, Defendants refuse to produce for deposition the very managers, employees, and representatives who were directly responsible for managing, overseeing, and performing AMEX/A&K's contract with Plaintiffs in Egypt and Kenya, respectively.

As more fully described in the Declarations of Gallagher and Witten, the A&K representatives in Egypt and Kenya sought to be deposed by Plaintiffs are the following:

      1. John Muchiri, General Manager of A&K in Kenya;

      2. Ahmed Tawfeek, Senior Tour Coordinator of A&K in Egypt;

      3. Mahmoud Hagag, Tour Coordinator of A&K in Egypt;

      4. Hossam Kotb, Tour Coordinator of A&K in Egypt;

      5. Unis (Eunice), tour guide of A&K in Kenya[22];

      6. John the Driver, tour guide of A&K in Kenya[23];

      7. Reuben Makau, Fleet Assistant of A&K in Kenya;

      8. Cyrus Magu, Tour consultant of A&K in Kenya;

---

[22] Official title presently unknown.
[23] Official title presently unknown.

9.  Amir Abdel Alim, Tour Consultant of A&K in Egypt;

10. Geoffrey Macharia, Division Manager of A&K in Kenya;

11. Fiby Youssif of A&K in Egypt.[24]

12. Jane Gano of A&K[25]; and

13. Julie Schwartz of A&K.[26]

14. Susan Jaeger of A&K.[27]  (Witten Decl., para. 12).[28]

15. Luca Belipietro, Owner of Campi Ya Kanzi[29];

16. Martin the Airplane Pilot at Campi Ya Kanzi[30];

As described in detail in the Declaration of Witten, notwithstanding Plaintiffs' substantial efforts to meet and confer with Defendants to coordinate these depositions in an orderly fashion with Defendants through the service of deposition notices of A&K's own employees as described above, Defendants have to date refused to cooperate with Plaintiffs and instead seek to exacerbate litigation costs in what can only be construed as an act of gamesmanship.

As a threshold matter, Defendants have evasively refused to provide any adequate explanation as to why, notwithstanding the facts as outlined above and in the Declarations of Gallagher and Witten, they continue to refuse to accept notices of deposition for these various A&K employees for which Defendants have greater access to information than Plaintiffs, and **over which Defendants clearly**

---

[24] Official title presently unknown.

[25] Official title and location presently unknown. Ms. Gano may be in Kenya, but Defendants could not confirm whether this was the case.

[26] Official title presently unknown. Ms. Schwartz may be in Kenya, but Defendants could not confirm whether this was the case.

[27] Official title presently unknown. Ms. Jaeger may be in Kenya, but Defendants could not confirm whether this was the case.

[28] Notices of deposition have already been served by Plaintiffs with respect to witnesses John Muchiri, Ahmed Tawfeek, Mahmoud Hagag, Hossam Kotb, Unis (Eunice), John the Driver, Luca Belipietro, and Martin the Airplane Pilot; Defendants have objected to the service any further notices for the depositions of the remaining out of country without subpoenas, and without confirming a deposition location *in Egypt or Kenya*.

[29] Official title presently unknown.

[30] Official title presently unknown.

12

1  **<u>maintain full control</u>**.

2      Furthermore, while Plaintiffs articulated numerous legal and pragmatic

3  bases that mitigated in favor of having the depositions taken here in the United

4  States, specifically in this District, Defendants have offered none, *other than* the

5  boilerplate assertion that the witnesses described in this Motion reside in foreign

6  countries and are not employees of A&K; such assertion is of course at extreme

7  odds with A&K's own previous representations to Plaintiffs and the public

8  (described in detail above and further in the Declarations of Gallagher and Witten)

9  and Initial Disclosures naming them as being A&K's General Managers and

10  representatives in Egypt and Kenya.  (Witten Decl., para. 3, 7).  Among other

11  things, Plaintiffs' articulated position to Defendants in favor of having the

12  depositions taken here in California rather than in Kenya and Egypt, include that

13  (1) there remain substantial questions of legality and exposure to physical danger

14  by conducting depositions in Kenya and Egypt, (2) Defendants conduct

15  substantial business here in the United States and have availed themselves of this

16  Country and State's benefits and protections (3) Defendants have availed

17  themselves of the benefits and protections of conducting business here in the

18  United States and have held out their overseas representatives as employees of

19  A&K, and (4) the Court needs to be immediately accessible to the parties in order

20  to address disputes that may arise during the course of the vital and very brief

21  opportunity to depose these foreign national witnesses.  (Witten Decl., para. 11).

22      As of the date of preparing Plaintiffs' portion of this Stipulation,

23  Defendants have failed and refused to engage Plaintiffs in a meaningful meet and

24  confer process to address any of the above issues (argued further hereinbelow)

25  identified by Plaintiffs in the course of *Plaintiffs'* extensive efforts to resolve the

26  parties' discovery dispute with Defendants, forcing Plaintiffs to file the instant

27

28

13

Motion to seek the Court's guidance on this matter.[31]  Preferring to stand firmly upon their simple un-buttressed "it's your problem" position, Defendants further refuse to confirm whether they in fact have control over these witnesses whom they identified as A&K representatives in their own Rule 26(a) Initial Disclosures and whom they may themselves call at trial.[32]  (Witten Decl., para. 3, 7).  In fact, when requested by Plaintiffs as an alternative, Defendants would not even agree to take the depositions of A&K's employees and representatives ***in Egypt or Kenya***, further suggesting the gamesmanship at play in this matter.  (Witten Decl., para. 12).  Defendants have also refused Plaintiffs' further offer for a stipulated exclusion of evidence or testimony from these A&K witnesses as a reasonable compromise between the parties, or (not surprisingly) a stipulation to a negative inference jury instruction as to any evidence or testimony attempted to be offered by Defendants at trial, as further described hereinbelow.[33]

Again, to the extent that Defendants have control over the above-referenced witnesses to produce them at trial in this District, then Defendants clearly have control to bring them to deposition here as well and should be compelled to do so instead of exploiting such control as unfair leverage against Plaintiffs in this discovery dispute.

**B.    IF DEFENDANTS HAVE CONTROL TO BRING THEM TO TRIAL, THEN THEY HAVE CONTROL TO BRING TO DEPOSITION. DEFENDANT A&K SHOULD BE COMPELLED TO PRODUCE ITS MANAGERS AND REPRESENTATIVES IN EGYPT AND KENYA FOR DEPOSITION WHO HAVE PERSONAL KNOWLEDGE OF**

---

[31] At one point, counsel for Defendants even wholly refused Plaintiffs' initial invitation to meet and confer with Plaintiffs regarding the depositions of out-of-country witnesses that had not yet been noticed by Plaintiffs. (Witten Decl., para. 6).

[32] These A&K employees in Egypt and Kenya included John Muchiri, Reuben Makau, Cyrus Magu, Jane Gano, Amir Abdel, Geoffrey Macharia, and Fiby Youssif.

[33] Plaintiffs have therefore satisfied their obligation to meet and confer, pursuant to Local Rule 37-1.

**THE TRANSACTIONS ALLEGED IN THE COMPLAINT.**

1.  **<u>Defendants Should Be Compelled To Produce A&K's Employees Under Their Control That Have Personal Knowledge Of The Events And Transactions Alleged In The Complaint.</u>**

Federal Rules of Civil Procedure ("FRCP") Rule 30 allows a party to take the deposition of "any person, including a party," which may include both natural persons, corporate entities. (FRCP 30(a)(1)). Furthermore, a party has the right to discover through such a deposition any non-privileged information "relevant to any party's claim or defense." (FRCP Rule 26(b)(1)). Such "relevance" standard is "accorded a broad and liberal treatment" (<u>Hickman v. Taylor</u> (1947) 329 US 495, 507) and interpreted expansively to include any information that "might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement thereof." (<u>Ceramic Corp. of America v. Inka Maritime Corp. Inc.</u> (CD Cal. 1995) 163 F.R.D. 584, 587).

As explained in detail above and further in the Declarations of Gallagher and Witten filed concurrently by Plaintiffs, these out-of-country witnesses are the very managers, employees, and agents of A&K responsible for performing Defendants' promises under the luxury travel contract with Plaintiffs in Egypt and Kenya, and who are therefore witnesses with important first-hand knowledge of the facts of this case. Accordingly, the testimony and documentary evidence offered by these individuals fall squarely within the permissible scope of relevant discovery, and Plaintiffs are entitled to them in pre-trial discovery.

As described in detail in the Declaration of Gallagher, Plaintiffs were at all times led to believe by A&K that he and Ms. Sanchez were being attended to by actual employees of Defendant A&K. Not only did both AMEX and A&K represent A&K to Plaintiffs and the world at large as a worldwide and reputable leader in the luxury travel industry (as described above), Plaintiffs were specifically told by A&K both verbally and in writing through itineraries and

brochures, that they would be met, guided, and provided support by A&K employees.  Furthermore, the managers, tour guides, drivers, and liaisons upon whom Plaintiffs had no choice but to rely to guide them and protect them in unfamiliar and exotic countries, expressly confirmed that they were employees of A&K; moreover, the fact they provided Plaintiffs with A&K business cards, wore A&K-labeled apparel, drove A&K vehicles, and performed services that were promised to Plaintiffs by A&K and AMEX further corroborated the truth of those representations.[34]  In other words, Plaintiffs had no reason to believe anything other than the fact that the above-referenced witnesses were A&K employees.

Despite the immense weight of the facts set forth above and in further detail in the Declarations of Gallagher and Witten, concerning the nature and role of these various witnesses in Egypt and Kenya as A&K's employees and agents under A&K's direct control, Defendants refuse to acknowledge them as such and argue that they are independent contractors and/or employees of independent contractors beyond the responsibility of either Defendant A&K or AMEX. (Witten Decl., para. 4 - 6).  Plaintiffs numerous attempts to discover the details to support such allegations have been met only by Defendants' repeated terse and vague boilerplate conclusions that each and every one of the named individuals are not affiliated with either A&K or AMEX other than as independent contractors.

If this is in fact true, are Defendants willing to admit that their voluminous representations made to Plaintiffs and to the consumer public at large detailed above were false?  If so, then it would appear that Defendants have no choice but to even further admit that it is upon these very false representations that has, in great part, driven the world-renown success of their global luxury travel service reputation, which boasts the ostensible, *if not actual*, global reach of their

---

[34] This is not to suggest, of course, that they were successful in their performance of Defendants' promises.

company based here in the United States through its "handpicked" employees under its full control.

In response to Defendants' curt responses that these witnesses as independent contractors, Plaintiffs have articulated the above-referenced facts to Defendants in extensive meet and confer letters and telephone conference, pointing out to Defendants that the numerous representations and conduct of A&K and the witnesses themselves were in complete contradiction to, and militated against such a position.   Plaintiffs have even pointed out to Defendants that Defendants themselves admit the direct affiliation of the witnesses referenced above with A&K by designating them as "*of A&K*" in their own Rule 26(a) Initial Disclosures. (Witten Decl., para. 7).   Their refusal to explain away such admissions to Plaintiffs as described above places the validity of their claims in even further question.   Defendants articulated no further details or arguments to support their position.  Nor would they either confirm or deny that these witnesses were under A&K's control.  (Witten Decl., para. 10).

In sum, since the substantial weight of facts submitted by Plaintiffs strongly mitigate in favor of finding that these witnesses are employees, managers, and/or agents of A&K and under A&K's control, Defendant A&K should be prohibited from its disingenuous reliance upon any purported separateness from these witnesses and should acknowledge its obligation to produce them for deposition upon notice.

### 2. Notices Of Deposition Are Sufficient To Compel The Attendance Of Those Witnesses Controlled By A&K.

A subpoena is not necessary to compel the appearance of a witness under a corporate party's control – in particular, the party's officer, director or managing agent.  (FRCP Rule 37(d)(1)(A)(i); Cadent Ltd. v. 3M Unitek Corp. 232 F.R.D. 625, 628, fn 1 (C.D. CA 2005) ["Under Rule 30(b)(1), it is well recognized that 'if the corporation is a *party, the notice compels it to produce* any 'officer, director or

managing agent' named in the deposition notice. ***It is not necessary to subpoena such individual***." (emphasis added)]).   In such a case, service of a deposition notice is effective by itself to compel such persons to attend and to testify, and to produce for inspection any document or thing described in the notice.  (GTE Products Corp. v. Gee, 115 F.R.D. 67, 68-69 (D. MA 1987).   Under the circumstances at bar, it is both necessary and appropriate that these witnesses be produced by Defendants to appear for deposition here in the United States, even where they reside and work at A&K's offices in Egypt and Kenya.

Accordingly, Plaintiffs served notices of deposition to the following witnesses on or about March 11, 2009:

        a.  "John the Manager" and John Muchiri (who are believed to be the same person);

        b.  Ahmed Tawfeek;

        c.  Mahmoud Hagag;

        d.  Hossam Kotb;

        e.  "Unis" (Eunice);

        f.  "John the Driver";

        g.  Luca Belipietro; and

        h.  Martin the Airplane Pilot.[35]  (Witten Decl., para. 2).

Defendant A&K, however, has refused to acknowledge that the notices served by Plaintiffs are in fact effective to compel it to produce the above-referenced individuals for deposition.   As explained above, Defendants' sole articulated boilerplate basis for such complete refusal to acknowledge the legal effect of the notices has been that they "are not employees of A&K." (Witten Decl., para. 7).   On this same boilerplate basis, Defendants further rejected

---

[35] Unfortunately, the last names of certain of these witnesses are not currently known since Plaintiffs were not always provided the information from A&K's representatives while in Egypt and Kenya.

Plaintiffs' request that Defendants accept notices of deposition as to the following additional witnesses, most of whom were again identified by Defendants in their own Initial Disclosures, and whom are similarly-situated as the above-described witnesses already noticed by Plaintiff with respect to their affiliation with Defendant A&K:

        a.  Reuben Makau;

        b.  Cyrus Magu;

        c.  Amir Abdel;

        d.  Geoffrey Macharia;

        e.  Fiby Youssif;

        f.  Amr Badr;

        g.  Dalia Khater;

        h.  Hany Adly; and

        i.  Mamodouh Hanna.

        j.  Jane Gano of A&K[36]; and

        k. Julie Schwartz of A&K.[37]

        l.  Susan Jaeger of A&K.[38] (Witten Decl., para. 7 – 8, 10).[39]

      Not only do the facts preponderate heavily in favor of finding these various individuals to be employees of A&K at its offices in Egypt and Kenya as argued above, Defendants do not deny that they have control of, and access to these witnesses, yet nevertheless refuse either to acknowledge the notices of deposition or to even facilitate the production of these witnesses for deposition.  As stated

---

[36] Official title and location presently unknown. Ms. Gano may be in Kenya, but Defendants could not confirm whether this was the case.

[37] Official title presently unknown. Ms. Schwartz may be in Kenya, but Defendants could not confirm whether this was the case.

[38] Official title presently unknown. Ms. Jaeger may be in Kenya, but Defendants could not confirm whether this was the case.

[39] Information regarding these witnesses has been lacking due to Defendants' failures and refusal to provide further information about them in supplemental disclosures and interrogatories.

above, in the event that A&K argues it should be allowed to produce these witnesses for trial, that would confirm that they **_do_** have control over these witnesses, as is believed to be the case, and A&K's argument that they cannot produce them for deposition is revealed to be false.  This would be an independent basis for the monetary and evidentiary sanctions sought herein.

In fact, the Court has authority to issue sanctions against party that fails to produce for deposition its officer, director or managing agent.  (FRCP Rule 37(d)(1)(A)(i); Cadent, *supra*, 232 F.R.D. 625, 628 fn 1 ["The [corporate party] risks *sanctions*-including default or dismissal-if the designated [officer, director or managing agent] fails to appear." (cites omitted)].).[40]

In short, since these witnesses are employees and/or agents under A&K's control, A&K should be compelled to accept service and acknowledge their legal duty to respond to duly issued Rule 30 notices and produce the above-referenced employees to appear for deposition.  Or, in the alternative, Plaintiffs respectfully request the Court to issue an evidentiary sanction against Defendants in addition to the monetary sanctions requested herein, ordering that any and all testimony or evidence derived from these witnesses should be excluded, unless such evidence is presented by Plaintiffs.[41]  Furthermore, a negative inference jury instruction should be issued from Defendants' failure to produce these witnesses for deposition.

**C.    DEFENDANT A&K SHOULD BE COMPELLED TO PRODUCE ITS MANAGERS AND REPRESENTATIVES IN EGYPT AND KENYA FOR DEPOSITION HERE IN THE UNITED STATES WHERE IT IS SAFE AND LEGAL TO DO SO.**

---

[40] "The court… may … order sanctions if … a party or a party's officer, director, or managing agent … fails, after being served with proper notice, to appear for that person's deposition…." (FRCP Rule 37(d)(1)(A)(i)).

[41] Among other things, Plaintiffs were, for example, provided with business cards of certain of these A&K representatives. (Gallagher Decl., para. 6).

1. **Defendants Are Unable To Confirm And Ensure The Safety Of Taking The Depositions Of The Above-Named Witnesses In Either Egypt And/Or Kenya.**

FRCP 28(b)(1) authorizes taking depositions abroad.   Plaintiffs have advised and offered to Defendants that they are willing to travel to Cairo, Egypt and/or Nairobi, Kenya, to take the depositions of the above-witnesses *if, and only if Defendants could guarantee Plaintiffs' safety and the legality of taking such depositions in those respective countries*.   (Witten Decl., para. 5(b)).   For this purpose, counsel for Plaintiffs have even offered, in good faith, dates of their availability.   (Witten Decl., para. 5).   Plaintiffs' counsel further advised Defendants' counsel that the depositions in Egypt and Kenya could be completed within approximately one week. (Witten Decl., para. 7).

Not only have Defendants ignored Plaintiffs' request to confirm and ensure the safety and legality of taking depositions in Egypt and Kenya, they further continue to steadfastly refuse to even facilitate the complicated and costly matter of coordinating such depositions in Egypt and Kenya.   Given Defendants' blatant refusals to acknowledge or address the issues of legality and safety attendant to sending US counsel to those foreign countries to take the depositions of their respective citizens as explained in more detail below, the equities preponderate in favor of compelling Defendants to produce their witnesses here in the United States for their brief depositions.   (Witten Decl., para. 5(b)).

2. **The Taking Of Depositions In Either Egypt And Kenya Would Be Perilous And Illegal For The Witnesses And For The Parties.**

    a. *Taking The Depositions In Either Kenya Or Egypt Would Place The Physical Safety Of The Parties And Witnesses At Substantial Risk.*

Plaintiffs' repeatedly articulated concerns to Defendants as to the safety of taking depositions in either Egypt or Kenya have been met with indifference by Defendants. (Witten Decl., para. 6, 12).  Towards this end, Plaintiffs have directed Defendants to the fact that the US Bureau of Consular Affairs, US Department of State, has issued a "Travel Warning" on November 14, 2008 advising against any international travel to Kenya, noting "***increased security concerns*** in northeast Kenya near the Somali border."  (Witten Decl., para. 12; **Exhibit "Q"**).  The Bureau in fact warns that "***[v]iolent and sometimes fatal criminal attacks, including armed carjackings and home invasions/burglaries, can occur at any time and in any location, particularly in Nairobi***."  (Witten Decl., para. 12; **Exhibit "Q"**).

The Bureau similarly warns US travelers to Egypt, noting that as recently as September 2008, "11 foreign tourists and eight Egyptians were kidnapped for ransom in the remote south-western desert region, close to the Sudanese border" and that "[t]ourists should avoid travel to the border region."  (Witten Decl., para. 12; **Exhibit "R"**).  The Bureau further describes Egypt's well-documented history of terrorist attacks since 2004, resulting in the killing of US citizens as well as local citizens, and that therefore "[t]ravelers should use caution when visiting destination resorts and hotels without significant physical setback and security procedures."  (Witten Decl., para. 12; **Exhibit "R"**).  Indeed, even depositions in Cairo and Nairobi (as indicated herein), known as more civilized cities in comparison to others throughout Egypt and Kenya, respectively, pose a substantial safety risk to a group of US attorneys, translators and court reporters traveling to undertake the work of a US Court in these challenging times.  (Witten Decl., para. 5, 14).[42]  Cadent Ltd., *supra*, presented an analogous situation, where the proposed

---

[42] Plaintiffs respectfully request that the Court take judicial notice of the document entitled "Travel Warning," dated November 14, 2008, prepared by the US Bureau of Consular Affairs, which can be found on the US Department of State's official government website, www.travel.state.gov, and which is attached as **Exhibit "Q"** to the Witten Decl.  Plaintiff

1  corporate deponent failed to provide sufficient evidence for a protective order

2  against requiring the corporation's Israeli-based representatives to travel to Los

3  Angeles for deposition.   In <u>Cadent, Ltd.</u>, the Court ultimately ordered the

4  depositions to be taken in Los Angeles, in part based upon the pragmatic fact that

5  a deposition in Israel might be dangerous. (<u>Cadent Ltd.</u>, *supra*, 232 F.R.D. 625,

6  630).

7          As confirmed by the US Bureau of Consular Affairs, the dangers of taking

8  a deposition in Egypt and Kenya are very real, and militates toward taking the

9  depositions here in the United States.

10         **b. *The Parties Do Not Have A Cognizable Legal Basis Upon***

11             ***Which To Rely To Take The Non-Voluntary Depositions In***

12             ***Egypt or Kenya Without Threat Of Incarceration.***

13         Plaintiffs' research further indicates that neither Egypt nor Kenya are

14  parties to the Hague Convention on Taking of Evidence Abroad in Civil or

15  Commercial Matters ("the Hague Convention"), and do not currently have similar

16  conventions or treaties with the US that would authorize the parties to take their

17  citizens' depositions in those countries.  (*See, e.g.*, <u>Triple Crown America, Inc. v.</u>

18  <u>Biosynth AG</u> (ED PA 1998) 1998 WL 227886, 1 [court noting the requirement to

19  resort to the Hague Convention for purposes of subpoenaing witnesses]).  (Witten

20  _____

21  further requests that the Court take judicial notice of the document entitled "Egypt Country
   Specific Information," Dated 15, 2008, prepared by the US Bureau of Consular Affairs, which

22  can be found on the US Department of State's official government website,
   www.travel.state.gov, and which is attached as **Exhibit "R".**  "The Court may [] take judicial

23  notice of pleadings, orders, and statutes from other jurisdictions if the documents are public
   records and capable of accurate and ready confirmation by sources that cannot reasonably be

24  questioned."  (<u>Yuen v. US Stock Transfer Co.</u> 966 F. Supp. 944-45 (CD Cal. 1997); <u>Clemmons</u>

25  <u>v. Bohannon</u> 918 F.2d 858, 865 (10th Cir. 1990), vacated on other grounds, on reh. *en banc* 956
   F2d 1523 (10th Cir. 1992) [court taking judicial notice of government reports and Surgeon

26  General's reports concerning health risk of environmental tobacco smoke); <u>Texas & Pac. Ry.</u>
   <u>Co. v. Pottorff</u> 291 US 245, 254 fn 4 (1933), amended on other grounds, 291 US 649 (1934)

27  [court taking judicial notice of official reports of the Comptroller of the Currency]; <u>Blair v. City</u>
   <u>of Pomona</u> (9th Cir. 2000) 223 F. 3d 1074 [court taking judicial notice of an independent

28  commission's report on the code of silence among police officers]).

Decl., para. 5(b); **Exhibit "L"**). In lieu of such legal authority, taking a US deposition within these sovereign countries could be criminal and result in incarceration. (Witten Decl., para. 5(b)).

Defendants have, to date, ignored Plaintiffs' concerns concerning the legality of taking depositions in either Egypt or Kenya and have offered no response or solutions to the problem, militating against the taking of depositions in those countries, exposing the parties' counsel and staff to the risk of engaging in illegal conduct within the borders of those sovereign countries.

Accordingly, *in lieu* of Defendants' ability to guarantee the safety and legality of the depositions referenced herein, the circumstances militate toward having those depositions taken here in the United States on dates mutually agreeable to the parties.

**D.   DEFENDANT A&K SHOULD BE COMPELLED TO PRODUCE ITS MANAGERS AND REPRESENTATIVES IN EGYPT AND KENYA FOR DEPOSITION HERE IN CALIFORNIA WHERE DEFENDANTS CONDUCT SUBSTANTIAL BUSINESS AND HAVE PURPOSEFULLY AVAILED THEMSELVES OF THE BENEFITS AND PROTECTIONS OF THE SEVERAL STATES.**

**1.   The Court Has Discretion To Determine The Proper Venue For Deposition.**

As explained above, there are substantial concerns over the very legality and safety of taking depositions in Kenya and Egypt – concerns which Defendants have refused to acknowledge as of the date of preparing Plaintiff's portion of this Stipulation.  Moreover, a plethora of additional grounds exist that mitigate in favor of having the depositions of the witnesses referenced above be taken by the parties here in the United States – Namely, here in California.  Toward this end, it is well-settled that "[a] district court has wide discretion to establish the time and

place of depositions."  (Hyde & Drath v. Baker, 24 F. 3d 1162, 1166 (9th Cir. 1994)(court citing In re Standard Metals Corp., 817 F. 2d 625, 628 (10th Cir. 1987), cert. dismissed, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988)).

Generally, the presumption is that a corporate party's deposition should be held at its principal place of business.  This presumption "is subject to modification, however, *when justice requires.*"  (Cadent Ltd., *supra*, 232 F.R.D. 625, at 628 (emphasis added)).  Even where such party-controlled and affiliated witnesses are foreign nationals or US citizens living abroad, they are subject to the court's personal jurisdiction and may be deposed wherever the Court directs. Indeed, "exceptions to the general rule on the location of depositions are not uncommon" (U.S. v. $160,066.98 from Bank of America, 202 F.R.D. 624, 627 (S.D. Cal. 2001)(citing Custom Form Mfg., Inc. v. Omron Corp., 296 F.R.D. 333, 336 (N.D. Ind. 2000).  In fact, "[w]hen a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made."  (Id. at 628 (court citing Custom Form, *supra*, at 336)).

## 2. Defendants Solicited Plaintiffs In California And Have Purposefully Availed Themselves Of The Benefits And Protections Of Conducting Business In This State And The Several United States.

As described in detail in the concurrently filed Declaration of Gallagher, AMEX and A&K solicited, and contracted with, Plaintiffs in California.  In fact, as described above, AMEX has offices in California, two of them within only 5 miles of the Court.  Moreover, both AMEX and A&K are wealthy multi-national corporations.  Their business conduct within the State of California mitigates in favor of compelling the depositions of A&K's employees in this State – more specifically, Orange County, where Defendants have also conducted business, and

1   where the Court and counsel for the parties are all located.

2        Further, in <u>Hyde</u>, supra, 24 F. 3d 1162, the Court of Appeals for the 9th

3   Circuit affirmed the district court's order compelling various Hong Kong

4   depositions to take place in San Francisco, in part since appellants had done

5   business and filed suit in the Northern District of California and should therefore

6   expect to have to appear there.  (<u>Id.</u> at 1166).  Similarly in the present action,

7   AMEX has filed multiple lawsuits in the Central District of California, and A&K

8   regularly invokes the protection of the Federal Courts located in California.  In

9   fact, within the last 20 years, A&K was organized as a foreign entity, and has filed

10  suit in US Courts.  It would now be hypocritical to claim that its foreign

11  employees should NOT come here for deposition, when its foreign employees

12  filed suit in the US, thereby making themselves available for deposition in the US,

13  and otherwise availing themselves of the benefits of the U.S. Court system when it

14  suited them.  (Witten Decl., para. 23-24).

15       Finally, cost is not a factor for Defendants, who are multinational

16  corporations engaging in global commerce.  Indeed, the worldwide reputations of

17  both A&K and AMEX for financial success and influence precede them, and they

18  each openly advertise and market their partnership affiliation with each other here

19  in the United States.  (Witten Decl., para. 21).  Both AMEX and A&K openly

20  market their partnership relationship with respect to AMEX's travel programs and

21  packages.  (Witten Decl., para. 21).  The enormous growth of Defendant AMEX

22  here in the United States and in the world travel industry has been touted in

23  publications by distinguished journalist publications such as Reuters, which

24  recently described AMEX Travel as "the world's largest travel service network"

25  which "has a network of Travel and Foreign Exchange Services at locations

26  worldwide."  (Witten Decl., para. 21).

27       Moreover, Defendants are large corporations backed by insurance funds

28  that are better able to afford the expense of the trip.  (*See, e.g.*, Defendants' Initial

Disclosures, attached as **Exhibit "O"** to Witten Decl., which discloses that Defendants have insurance coverage)

3.  **The Depositions Should Be Taken Here In California To Secure A Prompt, Efficient And Effective Discovery Process.**

The depositions of the various A&K employees should be taken, at one time and at one location, in the United States – namely California where the parties and counsel reside and where the Court is located - rather than abroad at the corporation's principal place of business[43] because "it would be difficult if not impossible for plaintiff to secure the depositions of [defendant abroad] in a manner as prompt, efficient and effective as that contemplated by the Federal Rules of Civil Procedure." The stated rationale is that American courts have an "overriding interest" in promptly and efficiently resolving litigation.   Triple Crown America, Inc. v. Biosynth AG, 1998 WL 227886 (E.D. Pa. 1998) (citing Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa, 482 U.S. 522, 107 S. Ct. 2542, 96 L. Ed. 2d 461, 7 Fed. R. Serv. 3d (LCP) 1105 (1987)).

In the instant case, as explained in the Declaration of Witten, the parties are located here, counsel are located here, and the Court is located here to address any discovery disputes that may arise in the course of these very crucial and limited depositions of a number of witnesses who are foreign nationals; the costs of sending and accommodating attorneys, reporters, and translators to Kenya and Egypt (compounded by the risks of such travel), traveling to different regions of those countries, in addition to the cost of returning to complete depositions not completed due to discovery disputes that may arise and which could not be resolved due to the inaccessibility of the Court, would quickly become unwieldy.

Indeed, the importance of the accessibility of the Court to resolve discovery

disputes concerning foreign witnesses as in the case at bar has been well-acknowledged by the Courts of the United States.  For example, in <u>Hyde</u>, *supra*, the Court of Appeals for the 9th Circuit upheld the district court's order to compel various Hong Kong depositions to take place in San Francisco, California in large part so that the court could directly oversee the proceedings.  (<u>Id.</u> at 1166).  Similarly, the district court in <u>Custom Form</u>, *supra*, justified its decision to compel the production of a Japanese corporation's employees for deposition in the United States in part as follows:

> "[T]he court's authority is compromised by distance. Without a federal judge or magistrate in Japan, it would be difficult to resolve discovery disputes that might arise in this matter." <u>Custom Form</u>, *supra*, 196 F.R.D. at 336-337).

Courts have also recognized the importance of considering the location of the parties and their counsel in considering the appropriateness of compelling a foreign resident to appear for deposition in the United States.  (<u>Cadent Ltd.</u>, *supra,* 232 F.R.D. 625, 628 – 629, 630 [Court ordered deposition of Israel resident to appear for deposition in Los Angeles, in part because counsel for all parties were located there]).  Not only are counsel for the parties located here in Orange County California, both parties are located within the United States, and in fact Defendant AMEX has two local offices here in Orange County within 5 miles of the Court. (Witten Decl., para. 22).

Given that the parties have only one discreet opportunity to take these depositions, and given the circumstances in the case at bar, the Court's immediate availability to provide guidance to the parties is imperative; should anything go awry in the process, the parties most likely will not be able to go back and take the depositions again.  As such, the importance of having the Court available to help resolve any issues, militates toward taking depositions here.

---

[43] A&K has its principal place of business in Illinois.

Furthermore, there are significant concerns over the intrusive impact upon the sovereignty of Egypt and Kenya, who are not parties to the pertinent section of the Hague Convention, as described above.  On the other hand, such concerns would be minimized if those depositions occurred here.  This was well-articulated by the District Court in <u>Custom Form</u>, *supra*, as follows:

> "[T]he court's authority would be compromised by sovereignty issues if depositions took place in Japan, rather than in the United States. If a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated. the court's authority is compromised by distance. Without a federal judge or magistrate in Japan, it would be difficult to resolve discovery disputes that might arise in this matter." (<u>Custom Form</u>, *supra*, 196 F.R.D. at 336-337).

Finally, foreign laws often restrict deposition procedures. For example, in a discovery dispute far more simple than the one at bench, in <u>Roberts v. Heim</u>, 130 F.R.D. 430 (N.D. Cal. 1990) (ordering Swiss defendant to appear for deposition in California), a deposition in Switzerland would have to be conducted by a local judicial officer and be taken in German.  In that case, the Parties would not receive a verbatim transcript, but the judicial officer would rather issue a report from handwritten notes.  To avoid the substantial expense, effort and delays resulting from such a process, the court required the deposition to take place in the United States.[44]

**E. DEFENDANTS SHOULD BE SANCTIONED FOR THEIR FAILURE TO PRODUCE THEIR EMPLOYEES FOR DEPOSITION AND TO ENGAGE PLAINTIFFS IN A MEANINGFUL MEET AND CONFER**

---

[44] This is assuming of course that the Parties can legally take the depositions of these witnesses in Egypt and Kenya in the first place, as argued above.

29

**PROCESS REGARDING THE DISCOVERY DISPUTE.**

Again, notwithstanding the above-referenced numerous bases articulated by Plaintiffs to Defendants, Defendants have offered none, *other than* the boilerplate and repeated assertions that the witnesses described in this Motion reside in foreign countries and are not employees of A&K.   As such, Defendants are subject to sanctions pursuant to FRCP Rule 37(d)(1)(A)(i) and Rule 37(d)(2).

Defendants' indiscriminate and unexplained refusals to produce ANY of the above-referenced witnesses for deposition ANYWHERE is in itself bad faith, has resulted, and will continue to result, in a rapid and wasteful accrual of litigation costs and complications in discovery for both parties as described above, and in itself constitutes sanctionable discovery conduct.

And if Defendants refuse to produce the witnesses, then:

1. Evidentiary sanctions precluding Defendants from introducing at trial, any testimony or evidence from the witnesses in Section I, above, or those who are similarly situated, whom Defendants have refused to produce for deposition;

2. Evidentiary sanctions of a negative inference jury instruction for Defendants' refusal to produce those witnesses in Section I, above, for deposition, such that any evidence those witnesses in Section I could have provided would have been against Defendants and would support Plaintiffs' allegations;

3. Monetary sanctions against Defendants in the amount of **$3,500.00**, for Defendants' failure to meet and confer in good faith with Plaintiffs concerning the instant discovery dispute, and for the refusal to produce the above-referenced witnesses for deposition without substantial justification, pursuant to Federal Rules of Civil Procedure Section 37(d)(1)(A)(i) and 37(d)(1)(A)(i))

## **PLAINTIFFS' CONCLUSION**

In sum, (a) Defendants' control over these employee witnesses; (b) the deeply relevant evidence to be provided by these witnesses; (c) the illegality and danger of undertaking the depositions in Cairo and Nairobi, (d) the location and resources of the parties in Orange County, (e) the benefit of having the Court accessible to address discovery disputes, (f) AMEX and A&K's solicitation of Plaintiffs and doing business in this District, (g) AMEX and A&K's availing themselves of the US legal system in California Districts when it suits them, (h) the location of both counsel in California, and (i) all other equities militate strongly in favor taking depositions here in Southern California.

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant their Motion to Compel in its entirety as set forth above, and to order Defendants to produce the above-referenced witnesses located in Egypt and Kenya to appear for deposition. In the alternative, if Defendants refuse to produce the witnesses, Plaintiffs request that the Court issue an evidentiary sanction against Defendants so that their testimony, and any evidence derived from them, should be excluded at trial, unless it comes from Plaintiffs. Further, a negative inference should be drawn from their failure to appear for deposition. Finally, Plaintiffs respectfully request that monetary sanctions be imposed against Defendants for their refusal to produce the above-referenced witnesses without substantial justification, and their bad faith refusals to produce their employees for deposition and further failure to engage Plaintiffs in a meaningful meet and confer to resolve the discovery dispute.

## **DEFENDANTS' INTRODUCTORY STATEMENT**

This matter arises out of a vacation package to Africa purchased by plaintiffs Richard Gallagher and Johanna Sanchez ("plaintiffs") from defendants Abercrombie & Kent, Inc. and American Express Travel Related Services ("defendants").

LOCAL RULE 37-1 JOINT STIPULATION

With the instant motion, Plaintiffs seek to compel the depositions of eight (8) non-party witness without properly noticing the depositions pursuant to Federal Rules of Civil Procedure Rules 30(a)(1) and 45(d).

On or about March 11, 2009, Plaintiffs improperly noticed the depositions of the following non-party witnesses, all of which Plaintiffs concede work and reside in Egypt (and some of which are not even identified by their full names):

1.    John Muchiri

2.    Ahmed Tawfeek;

3.    Mahmoud Hagag;

4.    Hossam Kotb;

5.    Unis (Eunice);

6.    John the driver;

7.    Luca Belpietro; and

8.    Martin the airplane pilot.

On or about April 7, 2009, defendants, by and through their attorneys of record, objected to the deposition notices of the eight (8) witnesses on the grounds that plaintiffs failed to properly notice the depositions of the witnesses as none of them are directors, managers and/or agents of Abercrombie & Kent, Inc ("A&K, Inc."). These individuals are employed by the independent contractors, Abercrombie & Kent Egypt and Abercrombie & Kent Kenya, neither of which are parties to this action. As such, plaintiffs are required to compel the deposition by subpoena pursuant to the Federal Rule of Civil Procedure Rule 45(d), as these individuals were non-party witnesses.

As specifically stated in the Terms and Conditions of the vacation package purchased by Plaintiffs:

> Abercrombie & Kent, Inc., its employees, shareholders, officers, directors, successors, agents, and assigns (collectively A&K) does not own or operate any entity (except for American Adventures, Inc.) which is to or does provide goods or services for

LOCAL RULE 37-1 JOINT STIPULATION

> the trip. It purchases transportation (by aircraft, coach, train, vessel or otherwise), hotel and other lodging accommodations, restaurants, ground handling and other services from various **Independent suppliers (including from time to time other affiliated Abercrombie & Kent companies).** All such persons and entities are ***independent contractors***. As a result, **A&K, Inc. is not liable for any negligent or willful act** of any such person or entity or of any third person.

(Emphasis added.)

Plaintiffs have presented no evidence that the eight (8) witnesses are employed by A&K, Inc. Plaintiffs merely contend that the individuals wore A&K, Inc. logos and represented themselves as A&K employees. As discussed below, the fact that employees in Kenya and Egypt use the same logo is not enough to establish that these witnesses are agents of A&K. Also, the fact that employees failed to inform plaintiffs that they were actually employed by A&K Kenya and A&K Egypt is not enough to support plaintiffs claim that A&K must produce these non-party witnesses. Defendants cannot be compelled to produce non-party witnesses from other countries to attend depositions in California.

Furthermore, plaintiffs misplaced assertion that these non-party witnesses should be compelled to deposition in California is without merit. Plaintiffs set forth no legal authority to support their contention that defendants should be compelled to produce non-party witnesses who do not reside in California and are not employed in the state of California.

Defendants respectfully request that this Court deny plaintiffs' motion to compel as the eight (8) witnesses are not employees of defendant, Abercrombie & Kent, Inc. and plaintiffs have failed to properly notice the depositions of the non-party witnesses. Defendants further request that this Court deny plaintiffs request for evidentiary sanctions to preclude defendants from introducing testimony and/or evidences form any of these named out-of-country witnesses at trial. Finally, defendants request the imposition of monetary sanctions against plaintiffs

1  equivalent to the reasonable attorneys' fees incurred by defendants in opposing

2  plaintiff's unsupported and improper motion.

3  **MEMORANDUM OF POINTS AND AUTHORITIES**

4  I. <u>INTRODUCTION</u>

5        A.    **<u>Factual Background</u>**

6        On May 28, 2008, plaintiffs, Richard Gallagher and Johanna Sanchez

7  ("plaintiffs") filed a complaint against defendants, American Express Travel

8  Related Services Company and Abercrombie & Kent, Inc. ("defendants") alleging

9  causes of action for (1) Negligence, (2) Fraud, (3) Constructive Fraud, (4)

10  Promissory Fraud, (5) Negligent Misrepresentation, and (6) Breach of Contract.

11  This Complaint arises out of a Vacation Package purchased by plaintiffs from

12  defendants.

13        On or about November 7, 2007, plaintiffs purchased a vacation package to

14  Africa from defendants.  Plaintiffs allege that defendants failed to provide certain

15  amenities that were agreed upon in the purchase of the vacation package.  The

16  vacation package also included a stay at Campi Ya Kanzi in Kenya, which is

17  owned by Luca Belipietro.  Plaintiffs further allege that they were attacked by

18  baboons during their vacation and defendants failed to warn Plaintiffs of certain

19  dangerous conditions, specifically, the baboons' proclivity to attack.

20        B.    **<u>Discovery Dispute</u>**

21            1.    <u>The Subject Witnesses are Independent Contractors of</u>

22                 <u>Abercrombie & Kent, Inc.</u>

23        On or about March 11, 2009, Plaintiffs improperly noticed the depositions

24  of the following non-party witnesses, all of which Plaintiffs concede work and

25  reside in Egypt (and some of which are not even identified by their full names):

26  (1) John Muchiri; (2) Ahmed Tawfeek; (3) Mahmoud Hagag; (4) Hossam Kotb;

27  (5) Unis (Eunice); (6) John the driver; (7) Luca Belpietro; and (8) Martin the

28  airplane pilot.

Abercrombie & Kent, Inc. ("A&K, Inc.") is an Illinois corporation, that arranges and sells travel services and vacation packages. (Declaration of Brett Fichte ["Dec. of Fichte"] ¶ 3 ). A&K, Inc. is 100% owned by Abercrombie & Kent Group of Companies SA, Luxembourg.  (Dec. of Fichte ¶ 3.)

A&K, Inc. sold the subject vacation package to defendant, American Express Travel Related Services ("American Express").   Plaintiffs' purchased the vacation package from American Express.  As part of plaintiffs' Itinerary, they were provide tours, transportation and hotel accommodations.

None of the eight (8) non-party witnesses whose depositions plaintiff's seek to compel, and each of whom reside and work in Egypt or Kenya, are directors, officers or employees of A&K, Inc. (Dec. of Fichte ¶¶ 10-17.)   As the Terms and Agreements of plaintiffs vacation package expressly states:

> Abercrombie & Kent, Inc., its employees, shareholders, officers, directors, successors, agents, and assigns (collectively A&K) **does not own or operate any entity** (except for American Adventures, Inc.) which is to or does provide goods or services for the trip. It purchases transportation (by aircraft, coach, train, vessel or otherwise), hotel and other lodging accommodations, restaurants, ground handling and other services **from various Independent suppliers (including from time to time other affiliated Abercrombie & Kent companies)**. All such persons and entities are *independent contractors*.  As a result, **A&K, Inc. is not liable for any negligent or willful act of any such person or entity or of any third person.**

(Empasis added). (Declaration of Rachel Menkes,["Decl. of Menkes"] ¶ 5, Exhibit D.)

As set forth in the Terms and Conditions, A&K, Inc. uses independent contractors to arrange and/or provide the actual tour components, such as hotel accommodations, meals, transportation, and local guide services.  (Dec. of Fichte ¶ 5.)   Abercrombie & Kent Egypt for Tourism SAE and Abercrombie & Kent Kenya Ltd are two such independent contractors.  (Dec. of Fichte  ¶ 6.)  A&K, Inc. does not own, operate, or control  Abercrombie & Kent Egypt for Tourism

SAE or Abercrombie & Kent Kenya Ltd.,    both of which are independent contractors and separate entities not affiliated with A&K, Inc.  (Dec. of Fichte ¶ 6.)

Abercrombie & Kent Egypt for Tourism SAE and Abercrombie & Kent Kenya Ltd are also 100% owned by Abercrombie & Kent Group of Companies SA, Luxembourg.  There is no cross-sharing among A&K, Inc. and Abercrombie & Kent Egypt for Tourism SAE or Abercrombie & Kent Kenya Ltd.  Campi Ya Kanzi is also independent contractor and a separate entity which is not affiliated with A&K, Inc.  (Dec. of Fichte ¶ 8.)   A&K, Inc. does not own, operate, or control Campi Ya Kanzi.   It is an independent contractor,   (Dec. of Fichte ¶ 8.)

A&K, Inc. arranged for Abercrombie & Kent Egypt for Tourism SAE and Abercrombie & Kent Kenya Ltd  to provide transportation and other land arrangements for plaintiffs while they were in Kenya and Egypt.  (Dec. of Fichte ¶ 9.)   A&K, Inc. does not employ any individuals in Kenya or Egypt.  (Dec. of Fichte ¶ 9.)  All services in Egypt and Kenya were provided by the independent contractors.  (Dec. of Fichte ¶ 9.)  **A&K, Inc. is not liable for any negligent or willful act of any such person or entity or of any third person**, including the actions of independent contractors affiliated with Abercrombie & Kent Egypt for Tourism SAE and Abercrombie & Kent Kenya Ltd and/or and Campi Ya Kanzi. (Decl. of Menkes ¶ 5, Exhibit D.)

2. Plaintiffs  Improperly Seek to Compel the Depositions on Non-Party Witnesses Who Reside in Egypt and Kenya.

On or about March 11, 2009, plaintiffs improperly noticed the depositions of eight (8) witnesses, which are the subject of this motion.  All eight witnesses work for independent contractors in Egypt and Kenya and all witnesses reside in Egypt and Kenya.  Four of the eight deposition notices do not even provide the witnesses' full name.  The parties have met and conferred and plaintiffs continue

to refuse to withdraw their improper deposition notices.   A summary of the meet and confer efforts are as follows:

On or about April 7, 2009, defendants, through their attorney of record, sent plaintiffs' a request to Meet and Confer, pursuant to Central District Local Rule 37-1 regarding the notices of the eight (8) witnesses on the grounds that the depositions of the non-party witnesses were improperly noticed.  (Dec. of Menkes ¶ 2.)  Defendants informed plaintiffs that the individual witnesses were not the directors, managers and/or agents of A&K, Inc.   (Dec. of Menkes ¶ 2.) Specifically, the witnesses were employed by independent contracts, therefore, plaintiffs must subpoena these deposition pursuant to Federal Rules of Civil Procedure Rules 30(a)(1) and 45(d).  (Dec. of Menkes ¶ 2.)   As defendants do not maintain control over the independent contractors, they cannot be compelled to produce the non-party witnesses.

On April 10, 2009, plaintiffs responded to defendants Meet and Confer Letter and stated that they would take the deposition notices of Luca Belipietro, owner of Campi Ya Kanzi, and Martin the Pilot off calendar so long as defendants "stipulated to exclude any evidence from them, or any one associated Campi Ya Kanzi." (Dec. of Menkes ¶ 3.)  Plaintiffs also stated that they were willing to travel to Kenya and Egypt to conduct the depositions of the employees of Abercrombie & Kent Egypt and Kenya so long as defendants could guarantee their safety and legality of taking the depositions in Egypt and Kenya.   (Dec. of Menkes ¶ 3.)

On April 23, 2009, defendants informed plaintiffs that their position "continues to be that [the] notices were improperly served."    Defendants also "encouraged plaintiffs to withdraw the improper Deposition Notices of the non-party witnesses." (Dec. of Menkes ¶ 4.)

Plaintiffs now seeks to compel the depositions of non-party witnesses without properly noticing their deposition.   As such, defendants respectfully

LOCAL RULE 37-1 JOINT STIPULATION

1   request that this court deny plaintiffs motion to compel and requests the
2   imposition of monetary sanctions against plaintiffs equivalent to the reasonable
3   attorneys' fees incurred by defendants in opposing plaintiff's unsupported and
4   improper motion.

5   **II.   <u>ARGUMENT</u>**

6       A.   <u>**Plaintiffs' Cannot Compel Defendants to Produce the**</u>
7            <u>**Depositions of Non-party Witnesses Employed by Independent**</u>
8            <u>**Contractors**</u>

9       Plaintiffs demand that this court compel defendants to produce eight (8)
10  witness that are not the directors, employees, or agents of the defendants.   The
11  District Court has held in directly similar cases that A&K Egypt and A&K Kenya
12  are separate entities from A&K International, Inc.

13      In *Dow v. Abercrombie & Kent International, Inc*., 2000 U.S. Dist. Lexis
14  7290 (N.D. Illinois 2000), the Court granted A&K International, Inc.'s motion for
15  summary judgment as plaintiffs failed to establish that A&K International, Inc.
16  had control over the services provided to plaintiffs while in Kenya.  In *Dow*, the
17  plaintiffs claimed that A&K Kenya was not an independent contractor, but
18  actually an agent of A&K International.  The Court held that A&K Kenya was not
19  an agent of A&K International and that "the Dows fail[ed] to offer evidence
20  supporting a reasonable inference that A&K International controlled A&K Kenya
21  or established A&K Kenya as its apparent agent."  (*Id*. at 21.)  The Court stated
22  that "the use of the same logo does not establish agency" (*Id*. at 12) and that
23  "[r]eferences to branch offices and the statement that 'A&K' manages and
24  controls 'the product line' or 'agents' are simply too vague to support an inference
25  of actual control by A&K International over A&K Kenya."   (*Id*. at 14.)
26  Furthermore, the Court noted that plaintiffs argument that the two companies
27  shared a website was insufficient to prove A&K International had control over
28  A&K Kenya.  (*Id*. at 16.)

1    Similarly, in *Paredes v. Abercrombie & Kent International, Inc.*, 81 F.

2    Supp. 2d 162(D. Mass. 1999) the Court held that A&K International, Inc. was not

3    a sister company of A&K Egypt.  The Court held that "A&K Int'l is not liable for

4    A&K Egypt's alleged negligence because they have similar names" and that "the

5    distribution of marketing material by A&K Int'l in which there is no

6    differentiation between A&K Int'l and A&K Egypt is insufficient to impute

7    liability to A&K Int'l." *Id.* 166.

8         Like *Dow* and *Paredes*, A&K, Inc. does not own, operate, or control

9    A&K Kenya or A&K Egypt.  The mere fact that the companies share the same

10   logos or website is insufficient to impute control by A&K, Inc. over the

11   employees of A&K Kenya or A&K Egypt.   The Terms and Conditions of

12   plaintiffs' itinerary specifically states that "[A&K] purchases transportation (by

13   aircraft, coach, train, vessel or otherwise), hotel and other lodging

14   accommodations, restaurants, ground handling and other services from various

15   Independent suppliers (including from time to time other affiliated Abercrombie

16   & Kent companies)."  In *Dow*, the exact same language was included in plaintiffs

17   itinerary and the court noted that "[t]his language disclaims A&K International's

18   liability for the negligence of independent contractors, and cannot be ignored."

19   (*Dow,* supra,  2000 U.S. Dist. Lexis at 19.)   Here, like in *Dow*, this Court cannot

20   ignore the statement in the Terms and Conditions which clearly states that A&K,

21   Inc. does not provide or control the services provided by independent contractors.

22   A&K, Inc. does not have control over the subject witnesses, nor has

23   plaintiffs produced such evidence to show A&K, Inc. controls these witnesses.

24   At the time of the subject vacation, witnesses (1) John Muchiri, (2) Ahmed

25   Tawfeek, (3) Mahmoud Hagag, (4) Hossam Kotb, (5) Unis, and (6) John the

26   Driver were employed by A&K Egypt or A&K Kenya.  As addressed above, these

27   companies are ***independent contractors*** that are not owned, operated or controlled

28

by A&K, Inc.  Therefore,  A&K, Inc. cannot be compelled to produce individuals who are not directors, managers, or agents of its company.

Furthermore, witness Luca Belipietro is the owner of CampiYa Kanzi in Kenya. A&K,Inc. does not own, control, or operate Campi Ya Kanzi. Therefore, A&K, Inc. cannot be compelled to produce an individual which is has no control over.  Additionally, Martin the Airplane Pilot is employed by an independent contractor and A&K, Inc. cannot be compelled to produce a non-party witness.

Plaintiffs have produced no legal authority supporting their contention that defendants controlled the subject witnesses.  As addressed above, A&K Egypt and A&K Kenya are not owned, operated or controlled by A&K, Inc. and the mere fact that the employees failed to distinguish themselves as A&K Egypt or A&K Kenya is insufficient to support a claim that A&K, Inc. had control over the individuals.  Therefore, plaintiffs cannot establish that defendants control the subject witness and defendants cannot be ordered to produce those third-party witnesses for deposition.

## B.   **Plaintiffs Have Failed to Properly Notice the Depositions of the Non-Party Witnesses**

Under Federal Rules of Civil Procedure Rule 30(a)(1):  "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2).  The deponent's attendance may be compelled by subpoena under Rule 45."

"Pursuant to Federal Rules of Civil Procedure Rule 45(d), the procedure for deposing a nonparty witness is to file a Notice of Deposition in the district where the action is pending, noticing the deposition of a witness, obtained a certified copy of the Notice of Deposition from that district, file the Notice of Deposition with the United States District Court of the district where the witness resides, and obtain a subpoena from that second district directing the witness to attend the

deposition within 100 miles of the witness' residence." *In re Texas International Co.* (1989) 97 B.R. 582, 585.   Additionally, pursuant to Federal Rule of Civil Procedure 45(b)(3) if "the witness is overseas, the procedures of the Hague Convention or other applicable treaty must be utilized."   *United States v. Afram Lines, Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).

Here, plaintiffs seek to compel the deposition of non-party witnesses without complying with Federal Rule of Civil Procedure Rule 45(d).   Plaintiffs personally served defendants with the notice of depositions for the non-party witnesses.   Defendants informed plaintiffs that the notice of depositions were not proper, specifically, that the witnesses were employees of independent contractors who were not parties to the action.   Plaintiffs, however, failed to withdraw the depositions and obtain subpoenas directing the non-party witnesses to attend the deposition.

As discussed above, these non-party witnesses reside in Kenya and Egypt. Plaintiffs therefore must compel the non-party witnesses pursuant to Federal Rule of Civil Procedure 45(b)(3).   Plaintiffs have failed to comply and cannot compel the depositions of the non-party witnesses.

Plaintiffs also seek to compel the non-party witnesses to attend a deposition in California.   Plaintiffs have provided no legal authority to support its claim that this court should compel non-party witnesses to be deposed in California. Plaintiffs cites to *Hyde & Drath v. Baker*, 24 F.3d 1162, 1165 (9th Cir. 1994) to support the contention that defendants have filed suit in the District of California, therefore, they should be compelled to conduct depositions in California. However, this argument is misplaced as the non-party witnesses are not employees of defendants and do not conduct business in the United States.

Plaintiffs further contend that the depositions should be taken in California because it would be difficult to secure the depositions in a manner that is prompt, efficient, and effective as that contemplated by the Federal Rules of Civil

LOCAL RULE 37-1 JOINT STIPULATION

Procedure.  (Plaintiffs' Motion to Compel at p. 28, lines 4-10.)  Again, Plaintiffs provide no legal authority to support the contention that this Court should compel non-party witness, who reside and work in foreign countries to be compelled to the United States for a depositions.  As such, this Court should deny plaintiffs request to compel the depositions of the non-party witnesses.

### C.      Plaintiffs Should be Sanctioned for Bringing Forth this Motion

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(b) if a party files a motion to compel and "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."

Defendants, therefore, respectfully request that this Court order monetary sanctions against plaintiffs for bringing this Motion to Compel.   Additionally, defendants request that this Court deny plaintiffs' request for sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(i) and 37(d)(2) as plaintiffs did not properly notice the depositions of the non-party witnesses and defendants have not refused to produce its managers, directors, or agents from being deposed.

Defendants, therefore, request monetary sanctions in the amount of $3,075 for expenses incurred for opposing plaintiffs' motion to compel.  (Menkes Decl. ¶ 6).

## III.   CONCLUSION

Plaintiffs seek to compel defendants to produce individual witnesses that are not managers, directors, or officers of defendants.  The subject witnesses are employed by independent contractors.   A&K Inc. does not own, operate, and/or control the independent contractors and cannot be compelled to produce employees of the independent contractors.   Furthermore, plaintiffs failed to comply with the Federal Rules of Civil Procedure and have not properly noticed

1 the depositions of the non-party witnesses. Therefore, plaintiffs motion to compel
2 must be denied.

3     As set forth herein, defendants respectfully request that this Court deny
4 plaintiffs' Motion to Compel in its entirety. Defendants also request that this
5 Court deny plaintiffs request to issue evidentiary sanctions. Finally, defendants
6 request that this Court order plaintiffs to pay defendants for costs incurred in
7 opposing the Motion to Compel.

8

9                     Respectfully Submitted ,

10

11 Dated: May 26, 2009      **WANG, HARTMANN, GIBBS,& CAULEY**

12

13                     By:   /s/Jason B. Witten

14                           Jeffrey C. P. Wang, Esq.

15                           Jason B. Witten, Esq.
                          Attorneys for Plaintiffs

16

17 Dated: May 26, 2009      **LEWS BRISBOIS BISGAARD & SMITH**

18

19                     By:   /s/ Rachel W. Menkes

20                           Esther P. Holm (SBN 140279)
                          Rachel W, Menkes (SBN 233938)

21                           Attorneys for Defendants

22

23

24

25

26

27

28