```
 1                UNITED STATES DISTRICT COURT

 2              FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3               SOUTHERN DIVISION, COURTROOM NO. 10D

 4          HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

 5                      - - - - - - - - - -

 6

 7   RICHARD GALLAGHER AND JOHANNA    )
     SANCHEZ,                         )
 8                                    )
                                      )
 9            PLAINTIFFS,             )
                                      )
10         VS.                        )   NO. SACV 08-743-AG
                                      )
11                                    )
      AMERICAN EXPRESS TRAVEL RELATED )
12      SERVICES, et al.,             )
                                      )
13            DEFENDANTS.             )
     _____)
14

15

16

17              REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                       Santa Ana, California

19                    Monday, September 29, 2008

20

21

22

23   Bernadette Balajadia, CSR #12841
     CA Certified Court Reporter
24   P.O. Box 51682
     Irvine, California 92619-1682
25   IslandSteno@gmail.com
     (949) 929-6471
```

```
 1   APPEARANCES OF COUNSEL:

 2


 3   FOR THE PLAINTIFFS:

 4
             WANG, HARTMANN, GIBBS & CAULEY, P.C.
 5           BY:  JASON B. WITTEN, ESQ.
             1301 Dove Street
 6           Suite 1050
             10th Floor
 7           Newport Beach, California 92660-2484
             (866) 970-0186
 8

 9


10


11


12
     FOR THE DEFENDANTS AMERICAN EXPRESS TRAVEL RELATED SERVICES,
13   ET AL.,:

14
             LEWIS BRISBOIS BISGAARD & SMITH LLP
15           BY:  RACHEL W. MENKES, ESQ.
             650 Town Center Drive
16           Suite 1400
             Costa Mesa, CA 92626
17           (714) 545-9200

18

19

20

21

22

23

24

25
```

```
 1            SANTA ANA, CALIFORNIA - MONDAY, SEPTEMBER 29, 2008
 2                     MORNING SESSION; 9:14 A.M.
 3         (THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:)
 4         THE CLERK:  Item four, SACV 08-743:  Richard
 5   Gallagher, et al., vs. American Express Travel, et al.
 6         MR. WITTEN:  Good morning, your Honor.  Jason
 7   Witten, W-i-t-t-e-n, of Wang, Hartmann, Gibbs & Cauley, on
 8   behalf of the plaintiffs Richard Gallagher and Johanna
 9   Sanchez.
10         MS. MENKES:  Good morning, your Honor.  Rachel
11   Menkes of Lewis, Brisbois, Bisgaard & Smith on behalf
12   defendants American Express Travel Related Services company
13   and Abercrombie and Kent.
14         THE COURT:  All right.  Well, this is quite an
15   African adventure.
16         MR. WITTEN:  Yes, it was.
17         THE COURT:  Do you want to tell me a little bit
18   about the case Mr. Witten.
19         MR. WITTEN:  Yes, your Honor.
20         My clients were solicited by American Express the
21   kind of network to individuals to take a luxury trip that --
22   it's the kind of which American Express, I guess,
23   Abercrombie and Kent put together.  What they bought was
24   essentially a three-week trip that they paid a $100,000 for.
25   And the trip was nothing that it was supposed to be.
```

```
 1              And they informed American Express that they had a
 2    phobia of crowds, and they were left in the middle of
 3    this --
 4              THE COURT:  200,000.
 5              MR. WITTEN:  $100,000.
 6              THE COURT:  No, 200,000 people.
 7              MR. WITTEN:  It -- I don't know about 200,000.
 8              THE COURT:  I think the complaint said 200,000
 9    people.
10              MR. WITTEN:  Oh, yes.  Yes, yeah.
11              At this place in Egypt where their horse caravan
12    got derailed.  They were left in the middle of the desert
13    with 200,000 people, no way back to the ship.  They were
14    given a group tour, first of all, which shouldn't have
15    happened.  And then when they, you know -- just to speed
16    things up -- and when they went down to Kenya, they were
17    taken out on their safari to a picnic out in a national park
18    that is normally nice.  Little did they know that a week
19    earlier, a troop of baboons out there had attacked school
20    children.  And the driver knew that and still took them to
21    the same spot.  And guess what happened?  They were attacked
22    by baboons.
23              Now, when you pay $100,000 for a nice trip, these
24    aren't the kinds of things that should happen to you.  It
25    wasn't what they bargained for and it wasn't what they got.
```

```
 1              THE COURT:  What does the defendants say?
 2              MS. MENKES:  Well, your Honor, the defendants say
 3   that, basically, the things that plaintiffs are complaining
 4   of that happened in Africa and in Egypt aren't the fault of
 5   the defendants; and that defendants did not have any
 6   knowledge of these things before they sent them or at any
 7   time.  Basically, that defendants provided the service that
 8   they said they would provide, and that we cannot be
 9   responsible for a beggar approaching plaintiffs or baboons
10   in Africa.
11              THE COURT:  Well, if the driver was your agent and
12   the driver knew, shouldn't he know not to do that?
13              MS. MENKES:  Well, your Honor, I -- I'm not sure,
14   first of all, that the driver was an agent of our company;
15   and I'm not sure at this point -- not enough of discovery
16   has gone through for me to know what the driver knew or told
17   them or should have told them.
18              THE COURT:  There were also allegations that there
19   were supposed to be private tours and they were thrown on a
20   minivan.  How did the -- is that what happened?  Or how does
21   that work?
22              MS. MENKES:  It's my understanding --
23              THE COURT:  It seems to me of a contractual
24   violation.
25              MS. MENKES:  It's my understanding that they were
```

1  put on private tours.  But, again, I would have to do some
2  more discovery.
3          **THE COURT:**  What kind of damages would you be
4  looking for, Mr. Gallagher -- what would Mr. Gallagher be
5  looking for in damages?
6          **MR. WITTEN:**  In terms of what would make him whole
7  again, obviously, their money back for the trip, which was
8  approximately a hundred thousand dollars and something for
9  their pain and suffering.  But they're not peevish people
10 and they're not greedy either so --
11         **MS. MENKES:**  And just to bring it to the Court's
12 attention, they have not yet paid for the trip.  It's still
13 owed in full in the American Express account.
14         **THE COURT:**  Well, Ms. Menkes, you said discovery
15 needs to be done but this was filed back in May, removed in
16 July.  I would have thought discovery had been -- you'd be
17 moving along on discovery.  It seems to me that November
18 2009 trial date is pretty far away.
19         Why so far away?
20         **MS. MENKES:**  Well, plaintiffs are anticipating
21 possibly discovery in Egypt and in Africa.
22         **MR. WITTEN:**  That is part of it.  The other slow
23 down for the beginning of discovery with the removal to
24 federal court.  This was originally, as you know, filed in
25 state court.  So we need to have our early meeting, and

```
 1   we're ready to begin.
 2              THE COURT:  What kind of discovery in Africa?  Do
 3   you need a discovery referee?
 4              MR. WITTEN:  I don't know we --
 5              THE COURT:  I was going to suggest myself.  It was
 6   a joke, never mind.
 7              MR. WITTEN:  (Chuckled).
 8              THE COURT:  Except for the baboon park
 9   approximate.
10         (Laughter.)
11              THE COURT:  What kind of discovery in Africa?
12              MR. WITTEN:  We want to do our best to try to
13   depose the driver.  There were a couple of agents in Kenya
14   that we have names for.  And we have people in Cairo that we
15   would like to speak to, too, if the case couldn't be
16   resolved.
17              THE COURT:  That can get pretty expensive for a
18   case probably in the low six figures.  Would you agree this
19   is a case whose damages are in the low six figures?
20              MR. WITTEN:  At this point, I would, your Honor.
21              THE COURT:  Okay.  Well, that discovery could get
22   expensive.
23              All right.  But that barely satisfies me that a
24   trial date in the fall of 2009 would be acceptable.
25              Now, you say a jury trial on Jul- -- November
```

```
 1   23rd.  That's right around Thanksgiving.  I would like to
 2   move it into the beginning of November so we avoid some of
 3   the holidays.
 4            Ms. Bredahl, a trial in the beginning of November
 5   of 2009.
 6            THE CLERK:  November 3rd.
 7            THE COURT:  How's that, Counsel?
 8            MR. WITTEN:  That's acceptable, your Honor.
 9            THE COURT:  All right.  November 3rd, pretrial
10   conference on -- and, by the way, let's set it for -- you
11   said four to six days -- and we're gonna make it a four-day
12   jury trial on November 3rd.
13            With a pretrial conference on?
14            THE CLERK:  November 19th.
15            THE COURT:  And a discovery cut off of?
16            THE CLERK:  August 3rd.
17            THE COURT:  August 3rd.  Uh-huh.
18            I actually might be in Egypt on August 3rd
19   ironically.
20            Okay.  The case probably should settle.  Have you
21   had settlement discussions?
22            MS. MENKES:  Not yet, your Honor.
23            THE COURT:  Well, they're gonna start today.
24            On the way out just talk about settlement now.  I
25   realize you haven't done a lot of discovery but talk about
```

```
 1   settlement.  And at least talk about what the next step
 2   might be towards settlement.  So you're ordered to do that.
 3             Aah, in cases like this, when I was a lawyer,
 4   sometimes I would be fearful of being the guy expressing
 5   weakness by bringing up the issue of settlement, and so now
 6   neither of you can appear to be weak.  You simply need to
 7   appear to be compliant with the Court's order that you
 8   discussed settlement.
 9             And I'm actually gonna order that you discuss it
10   now and at every other opportunity 'cause it should settle.
11             And next time I see you, I will ask have you been
12   discussing settlement, okay?
13             Anything further?
14             MR. WITTEN:  With regard to -- I think we chose
15   category three for --
16             THE COURT:  Okay.
17             MR. WITTEN:  -- our settlement plan.  I don't know
18   the order that -- apart from the dates that you changed, is
19   everything else going to stand --
20             THE COURT:  Yes.
21             MR. WITTEN:  -- for the pretrial?
22             THE COURT:  Right, it will.
23             MR. WITTEN:  Thank you.
24             THE COURT:  All right.  Anything further?
25             MR. WITTEN:  No.
```

SACV 08-743-AG - 09/29/08

10

```
 1            MS. MENKES:  No, your Honor.
 2            THE COURT:  Thank you.
 3            MS. MENKES:  Thank you.
 4            MR. WITTEN:  Have a nice day.
 5                  (Proceedings concluded.)
 6                         --oOo--
 7
 8
 9              C E R T I F I C A T E
10
11       I HEREBY CERTIFY THAT PURSUANT TO SECTION 753,
   TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE
12 AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED
   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER; AND THAT THE
13 TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE
   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.
14
15
16 DATE:  JULY 2, 2009
17
18
19                    (Certified Electronic copy/BB)
                   BERNADETTE BALAJADIA, CSR NO. 12841
20                      CERTIFIED COURT REPORTER
21
22
23
24 PLEASE NOTE:  COPIES OF THIS TRANSCRIPT ARE NOT
   CERTIFIED IF NOT CONFORMED WITH THE PROVISIONS OF
25 GOVERNMENT CODE SECTION 69954(D) UNLESS THEY BEAR
   THE ORIGINAL SIGNATURE OF BERNADETTE BALAJADIA.
```