UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD GALLAGHER and JOHANNA SANCHEZ, | ) ) ) | CASE NO. SACV 08-0743 AG (RNBx) |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' |
| v. | ) ) ) | MOTION FOR PARTIAL SUMMARY JUDGMENT AND |
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY; ABERCROMBIE & KENT, INC.; and DOES 1-20, inclusive, | ) ) ) ) ) | GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) ) | |
| _____ | ) | |

This case involves claims of, among other things, negligence, fraud, and breach of contract arising out of a luxury African vacation package purchased by Plaintiffs Richard Gallagher ("Gallagher") and Johanna Sanchez ("Sanchez") (collectively "Plaintiffs") from Defendants American Express Travel Related Services Company ("Amex") and Abercrombie & Kent, Inc. ("A&K") (collectively, "Defendants"). Defendants filed a Motion for Summary Judgment ("Defendants' Motion"), and Plaintiffs filed a Motion for Partial Summary Judgment ("Plaintiffs' Motion"). After considering the abundance of papers and arguments submitted, the

1  Court GRANTS in part and DENIES in part Plaintiffs' Motion, and GRANTS in part and

2  DENIES in part Defendants' Motion.

3

4  **PRELIMINARY MATTER**

5

6      Defendants have filed evidentiary objections to evidence.  (Evidentiary Objections of

7  Defendants American Express Travel Related Services Company and Abercrombie & Kent, Inc.

8  to Plaintiff's Sur-Reply.)  The Court did not find it necessary to rely on any of the evidence

9  objected to by Defendants in reaching its decision.

10

11  **BACKGROUND**

12

13      Plaintiffs Richard Gallagher and Johanna Sanchez (collectively, "Plaintiffs") are a

14  married couple residing in Orange County, California.  In 2006 and 2007, Gallagher, an

15  American Express cardholder, received periodic solicitations from AmEx regarding the

16  company's luxury travel planning services.  (Gallagher Decl. ¶ 4.)  In October 2007, Plaintiffs

17  contacted AmEx to ask about its luxury travel planning services.  Lynette Noa ("Noa"), a travel

18  agent employed by AmEx, contacted Plaintiffs and solicited them to purchase a vacation

19  package including travel to the Maldives, Egypt, and Kenya.  (Gallagher Decl. ¶ 6.)  Noa told

20  Plaintiffs that the vacation package would include private tours, first class airfare, high quality

21  hotel stays, and luxury safari excursions.  (Gallagher Decl. ¶ 8.)  Plaintiffs purchased the

22  vacation package.  (Gallagher Decl. ¶ 9, Exs. A-D.)

23      A&K's "Terms and Conditions" of Plaintiffs' vacation package included a clause

24  containing "Disclaimer Language."  The clause provides as follows:

25

26      Abercrombie & Kent, Inc., its employees, shareholders, officers,
        directors, successors, agents, and assigns (collectively A&K)
        does not own or operate any entity (except for American Adventures,

27      Inc.) which is to or does provide goods or services for the trip. It
        purchases transportation (by aircraft, coach, train, vessel or

28      otherwise), hotel and other lodging accommodations, restaurants,

2

ground handling and other services from various Independent
suppliers (including from time to time other affiliated Abercrombie &
Kent companies). All such persons and entities are independent
contractors. As a result, A&K, Inc. is not liable for any negligent or
willful act of any such person or entity or of any third person.

In addition and without limitation, A&K is not responsible for
any injury, loss, death, inconvenience, delay or damage to personal
property in connection with the provision of any goods or services
whether resulting from but not limited to acts of God or force
majeure, illness, disease, acts of war, civil unrest, insurrection or
revolt, animals, strikes or other labor activities, criminal or terrorist
activities of any kind, overbooking or downgrading of services, food
poisoning, mechanical or other failure of aircraft or other means of
transportation or for failure of any transportation mechanism to arrive
or depart on time.

There are certain inherent risks in adventure travel of the type
involved here. These include, but are not limited to, risks of white
water rafting, kayaking and rafting …, horseback riding … hiking,
walking safaris, downhill or cross country skiing … and in all trips
dangers of animals, inaccessibility to medical attention and difficulty
in evacuation from remote locations in the case of a medical
emergency. Passenger assumes all such risks with regard to these
possibilities.

[Plaintiffs' UF 75.]

As detailed in the Analysis Section, Plaintiff's luxury vacation did not go smoothly.
Among other things, Plaintiffs' room on a Nile River cruise ship was too small, so Plaintiffs
decided to take a different cruise ship, at their own expense. (Gallagher Decl. ¶ 18; Holm Decl.
¶¶ 3,5,6,20, Exh. 2, Itinerary; Exh. 4, Gallagher Dep 131:18-21, 132:5-8; Exh. 5, Sanchez Depo
175:7-179:10.)   The substitution of the new cruise ship caused some variations in the itinerary.
(Compl. ¶¶ 13, 33; Holm Decl. ¶¶ 2, 5, 6, 24, Exh. 4, Gallagher Depo 235:7-16; Exh. 5, Sanchez
Depo 175:7-179:10.)  Instead of the private automobile tour of Edfu Temple, Plaintiffs endured
an "uncomfortable horse-drawn carriage" group tour.  (Gallgaher Decl. ¶¶ 24.)  Plaintiffs also
participated in a guided tour, in a vehicle, of a Nairobi National Park.  (Gallagher Decl. ¶ 32.)
During this tour, Plaintiffs left the vehicle to photograph wild baboons.  While snapping photos,
baboons attacked Plaintiff Sanchez, causing her to fall down while attempting escape.
(Gallagher Decl. ¶¶ 32-33.)  The fall resulted in serious injury to her knee, which was aggravated
by baboon excrement that got into her wound during the fall, causing a serious infection.

1    (Gallagher Decl. 32-33, 37.)

2         Based on these facts and others, Plaintiffs brought nine claims against Defendants,

3    numbered as follows: (1) negligence; (2) fraud; (3) constructive fraud; (4) promissory fraud; (5)

4    negligent misrepresentation; (6) breach of written contract; (7) breach of oral contract; (8)

5    breach of implied contract; and (9) breach of the covenant of good faith and fair dealing.  Both

6    parties now move for summary judgment.

7

8    **LEGAL STANDARD**

9

10        Summary judgment is appropriate only where the record, read in the light most favorable

11   to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . .

12   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also*

13   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the

14   proof or defense of a claim, and are determined by reference to substantive law.  *Anderson v.*

15   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is

16   such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  In

17   deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed,

18   and all justifiable inferences are to be drawn in his favor."  *Id*. at 255.  But the Court need not

19   "assume the truth of legal conclusions merely because they are cast in the form of factual

20   allegations."  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

21        The burden initially is on the moving party to demonstrate an absence of a genuine issue

22   of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden,

23   then the non-moving party must produce enough evidence to rebut the moving party's claim and

24   create a genuine issue of material fact.  *See id*. at 322-23.  If the non-moving party meets this

25   burden, then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210

26   F.3d 1099, 1103 (9th Cir. 2000).

27

28

1  **ANALYSIS**

2

3  **1.      PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

4

5          In Plaintiffs' Motion, Plaintiffs ask that Summary Judgment be granted on four issues: (1)

6  the A&K Disclaimer does not cover Amex; (2) the Disclaimer is void as unconscionable or a

7  contract of adhesion; (3) the African Entities are Agents of Amex and A&K; and (4) Amex

8  breached a special duty to disclose as a travel agent by not revealing that Amex and A&K are

9  not responsible for the African Entities.

10

11         **1.1      A&K'S Disclaimer**

12

13         Plaintiffs' first argument is that the Disclaimer Language does not cover Amex because

14 Amex is not a party to A&K's Terms and Conditions. (Motion 14:18-15:3.)  Defendant Amex

15 submitted evidence that its contract contains Terms and Conditions with disclaimer language,

16 and that Plaintiffs received these Terms and Conditions before their luxury vacation. (Vanden

17 Heuvel Decl. ¶¶ 21; Exh. 21, Amex Flight Itenerary.)  But Defendant has not produced evidence

18 that the A&K disclaimer covers Amex.  Defendant may rely on its own disclaimer language, but

19 may not rely on the disclaimer language provided by A&K.  Partial Summary Judgment is

20 GRANTED as to this issue.

21

22         **1.2      Unconscionable Contract and Contract of Adhesion**

23

24         Next, Plaintiffs ask the Court to find that the Disclaimer Language is void as

25 unconscionable or a contract of adhesion. Under California law, unconscionability refers to an

26 absence of meaningful choice on the part of one of the parties together with contract terms which

27 are unreasonably favorable to the other party.  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165,

28 1170 (9th Cir. 2003).  An unenforceable contract of adhesion is one that either: (1) falls outside

1    the reasonable expectations of the weaker party; or (2) is unduly oppressive or unconscionable.

2    *Graham v. Scissor-Tail*, 28 Cal. 3d 807, 821-22 (1981).

3        Plaintiffs fail to meet their burden of showing an absence of genuine issue of material fact

4    here.  A reasonable finder of fact could decide that Plaintiffs had meaningful choices, such as

5    booking a luxury African vacation through a different travel agency, or booking a luxury

6    vacation to another destination, or not taking a luxury vacation at all.  Likewise, a reasonable

7    finder of fact could find that Plaintiffs' expectations were not reasonable, and that the Disclaimer

8    Language was not unduly oppressive.

9        Plaintiffs also argue that the Disclaimer Language was not conspicuous and that they did

10   not read the disclaimer.  But the only requirement is that the disclaimer be "reasonably

11   communicated," not that it be conspicuous.  *Hodes v. SNC Achille Lauro ed Altri-Gestione*, 858

12   F.2d 905, 910 (3rd Cir. 1988) (holding that contractual conditions printed on cruise tickets were

13   valid, even though they were in small type).  Further, Plaintiffs' failure to read the contract does

14   not render it unconscionable.  *See Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3rd Cir.

15   1987), *cert denied*, 484 U.S. 852 (1987) (holding that the passenger who omits to read the

16   contract takes the risk of omission).

17       Summary Judgment is DENIED on the issue of unconscionability and contract of

18   adhesion.

19

20   **1.3    Agency**

21

22       Third, Plaintiffs request that the Court grant summary judgment on the issue whether the

23   African Entities are agents of Amex and A&K.  Plaintiffs rely on two theories.  Plaintiffs' first

24   theory is ostensible agency.  An agency is ostensible when the principal intentionally, or by want

25   of ordinary care, causes a third person to believe another to be his agent who is not really

26   employed by him."  *Lee v. Helmco, Inc.*, 199 Cal. App. 2d 820, 834 (1962) (citing Cal. Civ.

27   Code § 2300.)  "The question whether an agency relationship has been created is normally a

28   question of fact."  *Stilson v. Moulton-Niguel Water Dist.*,  21 Cal. App. 3d 928, 936 (1971)

1  (citing *Thayer v. Pacific Elec. Ry. Co.*, 55 Cal. 2d 430, 438 (1961)).

2        Genuine issues of fact exist as to whether Defendants acted with intent or want of

3  ordinary care to cause Plaintiffs to believe that the African Entities were agents of Defendants.

4  Defendants produced, among other things, a Contractual Disclaimer as to Amex stating that

5  Amex will not be liable for the "acts or omissions of travel suppliers." (Vanden Heuvel Decl. ¶

6  21 and Exh. 21.) A&K's Terms and Conditions includes a clause stating that A&K "does not

7  own or operate any entity (except for American Adventures, Ltd.) which is or does provide

8  goods or services for your trip." (Ohashi Decl, Ex. A, at Bates No. A&K3.) In response to these

9  clear disclaimers, Plaintiffs' add the additional argument in their Reply that "because the

10  contract with Plaintiffs was procured by Defendants' fraud, they cannot enforce their asserted

11  disclaimers." (Reply 9:4-6.) Plaintiffs assert that "[i]f Plaintiffs succeed at trial on any of their

12  fraud-based claims, then the contract with Defendants which resulted from that fraud is voidable,

13  and the Defendants' disclaimers are therefore unenforceable." (Reply 9:11-14.) This argument

14  fails on two fronts. First, it is improper to raise an argument for the first time in a reply brief.

15  *See Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 n.6 (9th Cir. 2004); *United States v.*

16  *Rearden*, 349 F.3d 608, 614 n.2 (9th Cir. 2003). Second, Plaintiffs' argument depends on the

17  outcome of the fraud-based claims, and therefore is inappropriate for partial summary judgment

18  here. When the facts are viewed in the light most favorable to the non-moving party, Defendants

19  here, a reasonable jury could decide that the Disclaimer Language by both parties shows that

20  Defendants did not intentionally or negligently cause Plaintiffs to believe that the African

21  Entities were Defendants' agents.

22        Plaintiffs' second theory of agency is that "Defendants have made evidentiary admissions

23  that African Entities are Agents of Amex and A&K America" because the representatives of the

24  African Entities indicate via representations, written materials, clothing logos, and car logos that

25  they work for A&K. (Motion 22:15-25.) But Defendants have produced enough evidence to

26  rebut Plaintiffs' claim and create a genuine issue of material fact. Many of the materials

27  Plaintiffs use to support their arguments were marked as "Abercrombie & Kent Egypt for

28  Tourism SAE" and "Abercrombie & Kent Kenya Ltd." (Vanden Heuvel Decl. at ¶¶ 15, 29 and

1  Exhs. 15, 29.)   Further, other district courts, in cases involving the same entities, have found

2  that "the distribution of marketing material by A&K Int'l in which there is no differentiation

3  between A&K Int'l and A&K Egypt is insufficient to impute liability to A&K Int'l." *Paredes v.*

4  *Abercrombie & Kent Int'l, Inc.*, 81 F. Supp. 2d 162 (D. Mass. 1999); *see also Dow v.*

5  *Abercrombie & Kent Intern., Inc.*, No. 99 C 6923, 2000 WL 688949, at *5 (N.D. Ill. 2000)

6  ("References to branch offices and the statement that "A & K" manages and controls "the

7  product line" or "agents" are simply too vague to support an inference of actual control by A &

8  K International over A & K Kenya; the statements do not refer to A & K Kenya.").  Partial

9  summary judgment is DENIED on the issue of agency.

10

11     **1.4     Travel Agent Duty to Disclose**

12

13     A travel agent who arranges vacation plans and therefore acts as more than a mere "ticket

14  agent" is a special agent of the traveler.  *Rookard v. Mexicoach*, 680 F.2d 1257, 1263 (9th Cir.

15  1982).  Agents have a duty to make reasonable efforts to give the principal information if the

16  agent has notice that the principal would desire it.  Restatement 2d Agency § 381.  Plaintiffs

17  assert that Defendants failed to make reasonable efforts to disclose that they were not

18  responsible for the actions of the African Entities.  (Motion 24:7-14.)  Defendants have met their

19  burden of showing a genuine issue of material fact by producing the Amex and A&K

20  Disclosures.  (cite.)  A finder of fact could find that these Disclosures were reasonable efforts to

21  give Plaintiffs notice of the limit on liability.  Further, Plaintiffs have not produced sufficient

22  evidence to show that Defendants would desire the information sought.  Plaintiffs' Motion for

23  partial summary judgment on the issue of duty to disclose is DENIED.

24

25     **1.5     Conclusion**

26

27     Plaintiffs' Motion Partial for Summary Judgment is GRANTED as to AmEx's reliance on

28  A&K's Disclaimer.  Plaintiffs' Motion is DENIED as to:  (1) Whether the disclaimer language is

void as unconscionable or a contract of adhesion; (2) whether the African Entities are Agents of Amex and A&K; and (3) whether Amex breached a special duty to disclose as a travel agent by not revealing that Amex and A&K are not responsible for the African Entities.

## 2.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for Summary Judgment on all of Plaintiffs' claims, as well as Plaintiffs' claims for exemplary or punitive damages and attorney fees.  The Court considers each in turn.

### 2.1    Plaintiffs' First Claim, Sounding in Negligence

Plaintiffs' first claim for negligence is brought against both defendants.  Plaintiffs assert that AmEx and A&K, acting as an agent for AmEx, breached their duty of care to Plaintiffs by "failing to exercise the proper degree of care in apprising Plaintiffs of important information and failing to warn of those dangers which Defendants should have reasonably been aware of." (FAC ¶ 27.)

To establish a claim for negligence under California law, Plaintiffs must prove that: (1) Defendants had a legal duty of care towards Plaintiffs; (2) Defendants breached that duty; (3) Plaintiffs suffered some injury as a proximate result of the breach; and (4) Plaintiffs were damaged.  *See Carleton v. Tortosa*, 14 Cal. App. 4th 745 (1993).  Plaintiffs must show that all four elements exist, and failure to prove any one element is fatal to their recovery.  *Banerian v. O'Malley*, 42 Cal. App. 3d 604, 607-16 (1974).

Defendants assert that they owed no duty to Plaintiffs, and therefore cannot be held liable for negligence.  Defendants make three arguments supporting their assertion that they owed no duty: (1) the dangers to Plaintiffs were open and obvious; (2) Plaintiffs assumed the risk of danger; and (3) the African entities were independent contractors.

1

2.1.1 Open and obvious danger

2

3      First, Defendants argue that they had no duty to warn Plaintiffs of dangers which were

4 open and obvious.  "It is established law, at least in the exercise of ordinary care, that one is

5 under no duty to warn another of a danger equally obvious to both."  *Andia v. Full Service*

6 *Travel*, No. 06-cv-0437 WQH (JMA), 2007 WL 4258634, at *6 (S.D. Cal. Nov. 29, 2007)

7 (citing *Marshall v. United Airlines*, 35 Cal. App. 3d 84, 90 (1973)).  Whether or not a danger is

8 obvious to the plaintiff is normally a question of fact for the jury.  *Dingman v. A.F. Mattock*

9 *Company*, 15 Cal.2d 622, 625 (1940).

10      Defendants assert that "[i]t is common knowledge that baboons are known to be

11 unpredictable, like all wild animals," and "[t]he danger of exiting a vehicle in an African park

12 where wild baboons are present to take photos of them was surely open and obvious to a person

13 of average intelligence, let alone plaintiffs who claim to be 'conservationists' and wildlife

14 researchers."  (Defendants' Motion Br. 10:6-7, 10:23-11:3.)  But Defendants cite only one piece

15 of evidence for these propositions: A picture of a baboon, taken by Plaintiffs, next to a sign that

16 says, in visible part, *"Beware of B."* Holm Decl. ¶¶ 5, 29, Exh. 4, Gallagher Depo 204:4-14, and

17 Exh. 11, Picture of Warning Sign and Baboon.)  Defendants assert that at trial they will produce

18 witnesses bearing a full picture of the sign, with "Beware of Baboons" easily readible.

19 (Defendants' Motion Br. 10 n.3.)  But the Court cannot grant summary judgment on promises by

20 a party to produce evidence in the future, and "all justifiable inferences" must be drawn in the

21 non-moving party's favor.  *Anderson*, 477 U.S. at 255.  Plaintiffs deny knowing whether the sign

22 actually said "Beware of Baboons," and Plaintiffs also presented evidence that the tour guide

23 suggested that Plaintiffs exit the car to take photos of the baboons. (Gallagher Decl. ¶¶ 31-33.)

24 The Court finds that a material issue of fact remains as to whether the danger of a baboon attack

25 was open and obvious to the Plaintiffs in these circumstances.

26

27

28

10

2.1.2   Assumption of Risk

Next, Defendants argue that they owed no duty under the primary assumption of risk doctrine.  The Court disagrees.

Under the primary assumption of risk doctrine, "by virtue of the nature of the activities and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury."  *Knight v. Jewett*, 3 Cal. 4th 296, 315 (1992).  "The question of the existence and scope of a defendant's duty of care is a legal question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury."  *Knight*, 3 Cal. 4th at 313.  The question turns on whether the plaintiffs' injury is within the "inherent" risk of the activity.  *Neinstein v. Los Angeles Dodgers, Inc.*, 185 Cal. App. 3d 176 (1986).  "A risk is inherent in a sport if its elimination (1) would chill vigorous participation in the sport; and (2) would alter the fundamental nature of the activity."  *Sanchez v. Hillerich & Bradsby Co.*, 104 Cal. App. 4th 703, 713 (2002).  "But it is thoroughly unrealistic to suggest that, by engaging in a potentially dangerous activity," a plaintiff consents to "a breach of duty by others that *increases* the risks inevitably posed by the activity or sport itself, even where the participating individual is aware of the possibility that such misconduct may occur."  *Knight*, 3 Cal. 4th at 311 (emphasis added).

The Court is not convinced that California courts would find an escorted trip, in a vehicle, through a national park, is the type of "activity" to which the assumption of risk doctrine applies as Defendants argue.  The California primary assumption of risk cases cited by Defendant all involve risks posed by sporting events or physical activity on the part of the plaintiffs.  *See Knight*, 3 Cal. 4th at 313 (touch-football); *Lackner v. North*, 135 Cal. App. 4th 1188, 1198 (2006) (skiing); *Neinstein*, 185 Cal. App. 3d at 180 (baseball fan struck by foul ball); *Saville v. Sierra College*, 133 Cal. App. 4th 857, 861 (2005) (plaintiff "suffered injury while practicing arrest and control techniques during a peace officer training class"); *see also Andia,* 2007 WL 4258634, at *3 (hiking); *Kalter v. Grand Circle Travel*, No. CV 08-02252 SJO, 2009 WL

1  1916242, at *1 (C.D. Cal. Jun. 24, 2009) (hiking).

2       In fact, the only case Defendant cites where the plaintiff was an observer of the sport,

3  rather than an active participant in it, is *Neinstein*, 185 Cal. App. 3d at 179, where the plaintiff

4  was hit by a foul ball during a professional baseball game at Dodger Stadium.  But the *Neinstein*

5  court based its decision on the uncontested facts that plaintiff knew and understood the risks, and

6  had also been warned in writing of those risks on the back of her ticket.  *Id.* at 184.  Being hit

7  with a foul ball was a risk inherent to the plaintiff's choice to "accept a highly sought after seat,

8  close to the sphere of action," that was "clearly unprotected by any form of screening."  *Id.*

9  Further, the court found that eliminating the risk of being hit with a foul ball would chill

10  participation in and alter the fundamental nature of professional baseball.  The court reasoned

11  that:

12           As we see it, to permit plaintiff to recover under the circumstances

13           here would force baseball stadium owners to do one of two things:

14           place all spectator areas behind a protective screen thereby reducing

15           the quality of everyone's view, and since players are often able to

16           reach into the spectator area to catch foul balls, changing the very

17           nature of the game itself; or continue the status quo and increase the

18           price of tickets to cover the cost of compensating injured persons

19           with the attendant result that persons of meager means might be

20           "priced out" of enjoying the great American pastime.

21

22  *Id.* at 181.

23       Here, the "activity" at issue was a guided tour, in a vehicle, through a national park,

24  during which Plaintiffs left the vehicle to take photographs.  Plaintiff Sanchez's injuries as a

25  result of this "activity" occurred when baboons attacked her, causing her to fall down while

26  attempting escape.  (Gallagher Decl. ¶¶ 31-32.)  Plaintiff Sanchez's fall resulted in serious injury

27  to her knee, which was aggravated by baboon excrement which got into her wound during the

28  fall, causing a serious infection.  (Gallagher Decl. ¶¶ 32-33, 37.)  The risk of being attacked by

baboons and falling into baboon excrement could be eliminated by, for example, instructing tourists to remain in the vehicle while taking photographs.  The Court cannot find, and Defendant does not argue, that eliminating these risks would chill participation in guided tours or photography, or that it alters the fundamental nature of guided vehicular tours or photography. *See Sanchez*, 104 Cal. App .4th at 713 (risk is only inherent if its elimination would chill vigorous participation in the activity and alter the fundamental nature of the activity).

Further, even if the primary assumption of risk doctrine applied here, Plaintiffs produced evidence that the tour guide instructed them to get out of the vehicle to take pictures, thus increasing any risk posed by the activity itself. *See Knight*, 3 Cal. 4th at 311(primary assumption of risk doctrine does not apply when a plaintiff consents to "a breach of duty by others that increases the risks inevitably posed by the activity or sport itself, even where the participating individual is aware of the possibility that such misconduct may occur").

Baseball is a sport.  Photography is an art.  While this Court appreciates both sport and art, it cannot find that the risks inherent in each, or the means of eliminating those risks, are equal.  The Court cannot grant summary judgment based on primary assumption of risk.

2.1.3   Independent Contractor

Defendants argue that the tortfeasors in Africa were independent contractors, and that Defendants are therefore not liable for the African entities' actions.  As described in Section 1.3 (Agency), *supra*, both parties have submitted evidence relating to whether the African entities were independent contractors or agents.  The Court finds that, when the evidence is viewed in the light most favorable to the non-moving party, the Plaintiffs here, genuine issues of material fact exist as to whether the African entities are agents or independent contractors of Defendants.

### 2.1.4   Conclusion

Material issues of fact remain as to whether the danger was open and obvious, and as to whether the African entities were agents or independent contractors.  Further, the primary assumption of risk doctrine does not apply in this case.  Accordingly, the Court cannot find as a matter of law that Defendants owed no duty to Plaintiffs, and Defendants' Motion is DENIED as to Plaintiff's first claim, for negligence.

## 2.2    Plaintiffs' Second, Third, Fourth, and Fifth Claims, Sounding in Fraud

Plaintiffs' second claim for fraud, third claim for constructive fraud, fourth claim for promissory fraud, and fifth claim for negligent misrepresentation are brought against both defendants.  All four claims are based on the same four alleged misrepresentations made before Plaintiffs' vacation: (1) that Plaintiffs would enjoy a "pleasant" trip down the Nile; (2) that Plaintiffs would enjoy an "amazing" safari experience; (3) that Plaintiffs would be provided with private drivers; and (4) that Plaintiffs would enjoy a private tour of Edfu's Temple with a private driver in an automobile.  (FAC ¶¶ 32, 42, 47, 55.)

### 2.2.1   "Pleasant" trip down the Nile and "amazing" safari experience

Plaintiffs assert that Noa, in inducing them to purchase the vacation, promised Plaintiffs a "pleasant" voyage down the Nile and an "amazing" safari experience.  The Court finds that these claims fail.  To succeed on an action for fraud, a plaintiff must establish facts sufficient to show that a representation was false at the time it was made.  *Davis v. Rite-Lite Sales Co.*, 8 Cal. 2d 675, 681 (1937); *Kerr v. Rose*, 216 Cal. App. 3d 1551, 1565 (1990).  The statement of a mere opinion cannot form the basis of a fraud claim.  *Carter v. Seaboard Fin. Co.*, 33 Cal.2d 564, 568 (1949); *Seeger v. Odell*, 18 Cal. 2d 409, 414 (1941); *French v. Freeman*, 191 Cal. 579, 586 (1923) ("It is conceded that the general rule is that an expression of opinion or belief, if nothing

14

1   more, and if so understood and intended, is not a representation of fact, and although false, does

2   not amount to actionable fraud.").  Here, Noa's alleged statements that the Plaintiffs would enjoy

3   a "pleasant" trip down the Nile or an "amazing" safari experience are statements of opinion.

4   Plaintiffs' fraud claim fails as to those alleged misstatements, and Defendants' Motion for

5   summary adjudication that those misstatements cannot constitute fraud is GRANTED.

6

7           2.2.2   Private drivers

8

9           Plaintiffs also assert that Noa orally promised Plaintiffs private drivers throughout the

10  trip.  In response, Defendants argue that "there is nothing in [Plaintiffs'] Itinerary which states

11  that they are to receive private drivers."  (Mot. 16:11-12.)  But Plaintiffs do not allege that their

12  itinerary promised private drivers or a private tour.  Plaintiffs allege that to induce them to

13  purchase the vacation package, Noa orally promised private drivers and a private tour of the

14  temple. (Gallagher Decl. ¶¶ 6-7, 22.)  Defendants do not argue that the written itinerary

15  constituted the entire agreement between the parties, and the itinerary does not, in fact, appear to

16  contain an integration clause.  Plaintiffs' fraud claims are not defeated by the fact that the

17  alleged misstatements do not appear in the written itinerary.  (*See* Complaint, Exh. A.)

18          Defendants also argue that the fraud claims fail because Defendants are not liable for the

19  actions of Campi Ya Kanzi.  (Defendants' Motion Br. 17:1-18:20.)  But Plaintiffs do not claim

20  that the owners or employees of Campi Ya Kanzi made any of the misstatements of material fact

21  on which Plaintiffs' fraud claims are based.  Plaintiffs allege that those statements were made

22  directly by employees of Defendants.  (Gallagher Decl. ¶ 75-82; Exhs. B-D.)

23          Defendants have failed to meet their initial burden of demonstrating an absence of a

24  genuine issue of material fact on the fraud claims to the extent that they are based on the promise

25  of private drivers throughout the trip, so summary judgment is DENIED on this issue.

26

27

28

### 2.2.3   Private Tour of Edfu's Temple

Plaintiffs allege that they were promised that when their cruise boat docked, they would be taken on a private tour of Edfu's Temple with a private driver in an automobile. (Holm Decl. ¶ 19; Compl. ¶ 32; Gallagher Decl. ¶ 22.)  Plaintiffs were scheduled for a cruise aboard the "Nile Adventurer," but decided to change to another cruise ship called the "Moon Goddess" because their room on the Nile Adventurer was "so small that Plaintiffs with their luggage literally did not fit in the room."  (Gallagher Decl. ¶ 18; Holm Decl. ¶¶ 3,5,6,20, Exh. 2, Itinerary; Exh. 4, Gallagher Dep 131:18-21, 132:5-8; Exh. 5, Sanchez Depo 175:7-179:10.)  Because Plaintiffs switched cruise ships, Plaintiffs took the Edfu Temple tour through the Moon Goddess itinerary rather than the Nile Adventurer itinerary.  (Compl. ¶¶ 13, 33; Holm Decl. ¶¶ 2, 5, 6, 24, Exh. 4, Gallagher Depo 235:7-16; Exh. 5, Sanchez Depo 175:7-179:10.)  The Moon Goddess Edfu Temple tour was a group tour, in an "uncomfortable horse-drawn carriage," rather than a private tour in an automobile.  (Gallagher Decl. ¶¶ 24.)

The elements of fraud are "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage."  *Conroy v. Regents of University of Cal.*, 45 Cal 4th 1244, 1255 (2009).  The tort of negligent misrepresentation "does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."  *Id.* at 1255.   "'Promissory fraud' is a subspecies of the action for fraud and deceit.  A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud."  *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

On the evidence provided by Plaintiff, no reasonable jury could find that at the time Defendants promised a private tour of Edfu's temple, Defendants knew that Plaintiffs would switch ships, and that the private automobile tour would not be on the itinerary on the new ship. Nor could a jury find that Defendants had no reasonable ground for believing that the private automobile tour would not take place, or that Defendants promised the private automobile tour

1 with the intent not to perform on that promise. The Court must therefore grant the motion for

2 summary judgment for Plaintiffs' claims for fraud, promissory fraud, and negligent

3 misrepresentation to the extent that these claims are based on the alleged misrepresentation that

4 Plaintiffs would get a private automobile tour of Edfu's temple.

5      Constructive fraud, on the other hand, "comprises all acts, omissions and concealments

6 involving a breach of legal or equitable duty, trust, or confidence, and resulting in damage to

7 another." *Efron v. Kalmanovitz*, 226 Cal. App. 2d 546, 560 (1964). Under California Civil

8 Code § 1573, constructive fraud exists "[i]n any breach of duty which, without an actually

9 fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by

10 misleading another to his prejudice, or to the prejudice of any one claiming under him." A

11 fiduciary relationship and nondisclosure must be alleged to make the elements of

12 misrepresentation and falsity irrelevant. *Byram v. Brand*, 219 Cal. App. 3d 926 (1990). "[A]

13 travel agent who arranges vacation plans and therefore acts as more than a mere 'ticket agent' is

14 a special agent of the traveler for the purposes of that one transaction between the parties."

15 *McCollum v. Friendly Hills Travel Ctr.*, 172 Cal. App. 3d 83, 91 (1985). Plaintiff has produced

16 evidence showing that Defendants did not disclose that Noa lacked a number of certifications,

17 did not have training and did not do research on how to prepare trips to Africa, and had never

18 prepared any trip to Cairo, on a Nile cruise, to Edfu's temple, to Nairobi National Park, or to

19 Campi Ya Kanzi before the trip she prepared for the Plaintiffs. (Gallagher Decl. ¶¶ 86-89; Ohasi

20 Decl., Exh. L 110-111, 141, 215-16, 242-43, 279-81; Exh. M 30-50, 52.) A reasonable jury

21 could find that Defendants breached fiduciary duties owed to Plaintiffs and failed to disclose

22 facts both about Defendants' competency to book luxury travel accommodations, and about the

23 size of the rooms aboard the Nile Adventurer. Further, a reasonable jury could make the

24 inference that the fact that Plaintiffs did not get a private automobile tour of Edfu's temple

25 resulted from that breach of fiduciary duty. On these facts, the Court cannot grant summary

26 judgment on the constructive fraud claim.

27      To sum up, the Court GRANTS Defendants' Motion for summary adjudication of

28 Plaintiffs' second claim for fraud, fourth claim for promissory fraud, and fifth claim for

negligent misrepresentation to the extent that these claims are based on the statement that Plaintiffs would enjoy a private tour of Edfu's Temple with a private driver in an automobile. The Court DENIES Defendants' Motion for summary adjudication of Plaintiffs' third claim for constructive fraud.

### 2.2.4    Conclusion

Because promises of a "pleasant" voyage or an "amazing" experience are merely statements of opinion, the Motion for Summary Judgment is GRANTED as to Plaintiffs' second claim for fraud, third claim for constructive fraud, fourth claim for promissory fraud, and fifth claim for negligent misrepresentation to the extent that those claims are based on Defendants' promising a "pleasant" trip down the Nile or an "amazing" safari experience. Summary judgment is also GRANTED on Plaintiffs' second claim for fraud, fourth claim for promissory fraud, and fifth claim for negligent misrepresentation to the extent that those claims rely on promises of a private automobile tour of Edfu's temple.

The Motion for Summary Judgment is DENIED as to Plaintiffs' second claim for fraud, third claim for constructive fraud, fourth claim for promissory fraud, and fifth claim for negligent misrepresentation based on the promise of private drivers throughout the trip. Summary judgment is also DENIED as to Plaintiffs' third claim for constructive fraud to the extent that it relies on promises of a private automobile tour of Edfu's temple.

### 2.3    Plaintiffs' Sixth, Seventh, and Eighth Claims, Sounding in Contract

Plaintiffs' sixth claim for breach of written contract, seventh claim for breach of oral contract, eighth claim for breach of implied contract, and ninth claim for breach of the implied covenant of good faith and fair dealing are brought against both Defendants. In all four claims, Plaintiffs assert that they entered into an agreement with AmEx to purchase their vacation package, that they fully performed every obligation required of them under the agreement, and

1   that despite Plaintiffs' full performance, Defendants failed to perform their obligations under the

2   contract. (Compl. ¶¶ 65-67, 72-74, 79-81.)

3        The elements of a claim for breach of contract are: (1) Both parties entered into a valid

4   contract; (2) Plaintiffs performed the essential provisions that were required of them; (3) all the

5   conditions occurred that were required for Defendants' performance; (4) Defendants failed to do

6   something that the contract required them to do; and (5) Plaintiffs were harmed by Defendants'

7   failure to perform. *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971).

8        Defendants first argue that the breach of contract claims fail because Plaintiffs did not

9   provide the consideration as agreed in the contract.  The parties dispute whether Plaintiffs paid

10  for the vacation.  Defendants assert that Plaintiffs have not paid for the vacation. (Holm Decl. ¶

11  4, Exh. 4, Depo of Gallagher 169-70.)  Plaintiffs assert that they did pay for the vacation, with an

12  American Express card, for which Plaintiff Gallagher is an authorized user.  (Gallagher Decl. ¶

13  27.)  A genuine issue of material fact exists as to whether the charges have been paid, so

14  summary judgment cannot be granted on this basis.

15       Next, Defendants argue that they are not liable for breach of contract because the

16  conditions for Defendants' performance did not occur.  This argument is based on Plaintiffs'

17  deviation from the itinerary.  But if Defendants "prevent[ed] or ma[de] impossible the happening

18  of a condition precedent, the condition is excused." *Storek & Storek, Inc. v. Citicorp Real*

19  *Estate, Inc.*, 100 Cal. App. 4th 44, 63 (2002) (citing *Parsons v. Bristol Development Co.*, 62 Cal.

20  2d 861, 868-69) (1965).  Plaintiffs have produced sufficient evidence to create a genuine issue of

21  material fact as to whether their deviations from the itinerary were caused by Defendants'

22  negligence, fraud, or other fault.  Summary judgment cannot be granted on this basis.

23       Finally, Defendants argue that they are not liable for breach of contract because they did

24  not fail to do something that the contract required them to do.  But Plaintiffs have provided

25  evidence that, among other things, they did not get private drivers, they did not get a private

26  automobile tour of Edfu's temple, they did not visit the Masai Mara Game Reserve, and that they

27  did not go on a nocturnal trip to see local wildlife.  (*See, e.g.,* Gallagher Decl. ¶¶ 22-24, 39, 48-

28  50, 70-71.)

1   Plaintiffs have produced sufficient evidence to create a genuine issue of material fact as to
2   whether Defendants breached contractual obligations to Plaintiffs, so summary judgment on the
3   contract claims is DENIED.

4

5   **2.4    Plaintiffs' Claim for Punitive Damages**

6

7   Plaintiffs' Complaint includes a request for punitive damages.    A claim for punitive
8   damages is a proper subject of a motion for summary adjudication.  *Catalano v. Superior Court*,
9   82 Cal. App. 4th 91, 92 (2000).

10  Both Defendant Amex and Defendant A&K are corporations.  Under California Civil
11  Code § 3294(d), a corporation cannot be held liable for punitive damages unless an "officer,
12  director, or managing agent" commits or authorizes an act of fraud, oppression, or malice.  *White
13  v. Ultramar, Inc.*, 21 Cal. 4th 563, 569 (1999); *see also Mock v. Michigan Miller's Mutual Ins.
14  Co.*, 4 Cal. App. 4th 306, 328-29 (1992).  Plaintiffs cite *Clark v. State Farm Mutual Auto. Ins.
15  Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005), for the premise that because they "have serious fraud
16  and negligence tort claims against Defendants, all of which if proved would support an award of
17  punitive damages," the Court should not grant summary judgment on the issue of punitive
18  damages.  Plaintiffs' reliance on *Clark* in misplaced.  That case dealt with sufficiencies of
19  pleadings in a motion to strike, and had nothing to do with whether sufficient evidence was
20  produced to show the commission or authorization of fraud, oppression, or malice on the part of
21  an officer, director, or managing agent. *Id.* at 406-07.  At the summary judgment stage, Plaintiff
22  must produce enough evidence to create a genuine issue of material fact.  *Celotex*, 477 U.S. at
23  323.  Plaintiff has not done so here.

24  Because Plaintiffs have not produced sufficient evidence to create a genuine issue of
25  material fact as to whether an officer, director, or managing agent committed or authorized an
26  act of fraud, oppression, or malice, summary judgment is GRANTED as to Plaintiffs' claims for
27  punitive damages.

28

**2.5    Plaintiffs' Claims for Attorney Fees**

Finally, Defendants request summary adjudication on Plaintiffs' request for attorney fees. Attorney fees are recoverable by a party only if authorized by a statute or by a written agreement.  Cal. Code Civ. P. § 1033.5(a)(10)(A-C).  Defendants point to evidence showing that the written terms of the agreement do not contain a contractual right to attorneys' fees. (Complaint, Exh. A, Agreement.)  Further, as Defendants argue in their papers, Plaintiffs did not plead a statutory basis for attorney fees, and the causes of action alleged do not provide an award of attorney fees.  *See* Cal. Code of Civ. P. § 1033.5.  Plaintiff does not respond to these argument in its opposition or sur-reply briefs.

The Court agrees with Defendant here.  Defendants' motion is GRANTED as to Plaintiffs' claims for attorney fees.

**DISPOSITION**

Plaintiffs' Motion Partial for Summary Judgment is GRANTED as to AmEx's reliance on A&K's Disclaimer.

Plaintiffs' Motion is DENIED as to:  (1) Whether the disclaimer language is void as unconscionable or a contract of adhesion; (2) Whether the African Entities are Agents of Amex and A&K; and  (3) Whether Amex breached a special duty to disclose as a travel agent by not revealing that Amex and A&K are not responsible for the African Entities.

Defendants' Motion for Summary Judgment is GRANTED as to: (1) Plaintiffs' second, third, fourth, and fifth claims for fraud, constructive fraud, promissory fraud, and negligent misrepresentation to the extent that those claims are based on Defendants' promises of a "pleasant" trip down the Nile or "amazing" safari experience; (2) Plaintiffs' second, fourth, and fifth claims for fraud, promissory fraud, negligent misrepresentation to the extent that those claims rely on promises of a private automobile tour of Edfu's temple; (3) Plaintiffs' claim for punitive damages; and (4) Plaintiffs' claim for attorney fees.

1    Defendants' Motion is DENIED as to: (1) Plaintiffs' first claim for negligence; (2)

2    Plaintiffs' second, third, fourth, and fifth claims for fraud, constructive fraud, promissory fraud,

3    and negligent misrepresentation to the extent that those claims are based on promises of private

4    drivers throughout the trip; (3) Plaintiffs' third claim for constructive fraud to the extent that it is

5    based on a promise of a private automobile tour of Edfu's Temple; (4) Plaintiffs' sixth claim for

6    breach of written contract, seventh claim for breach of oral contract, eighth claim for breach of

7    implied contract, and ninth claim for breach of the implied covenant of good faith and fair

8    dealing.

9

10   IT IS SO ORDERED.

11   DATED: October 22, 2009

12

13                                                    _____

14                                                          Andrew J. Guilford
                                                       United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28